COMMUNITY SERVICE FOUNDATION, INC., Appellant,

v.

BUCKS COUNTY BOARD OF ASSESSMENT AND REVISION OF TAXES.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided Feb. 28, 1996.

Dean W. Ibrahim and Jeffrey C. Trauger, for Appellant.

Edward Rudolph and Stuart M. Race, for Appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

Community Service Foundation, Inc. (CSF) appeals from an order of the Court of Common Pleas of Bucks County (trial court) that affirmed, on consolidated appeals, two orders of the Bucks County Board of Assessment and Revision of Taxes (Board) denying CSF tax exempt status as a purely public charity. We affirm.

CSF is a non-profit corporation incorporated in 1977 by Theodore Watchel and his wife, which provides residential, educational and counseling services to troubled youths. CSF's three properties at issue are a school and treatment center, a residential property housing married couples who serve as surrogate parents and a group home serving as a residence for youths attending the school.

CSF programs are funded by the Commonwealth, by Bucks County (County), by payments from some of the students' parents and by charitable grants and donations. CSF compensates its staff at rates lower than comparable government rates. In years when funding ran out before the end of the school year the staff continued to provide services until the end of the year. If CSF enjoys a surplus it reinvests that money in the organization.

CSF sought tax exemptions for its real estate holdings as an institution of purely public charity. The Board denied CSF's requests and CSF appealed. In an opinion and order dated December 5, 1994, the trial court affirmed the Board. The trial court stated that contributions and sources of funding to CSF were critical in determining whether CSF relieved government of some of its burden and is a public or private charity. The trial court critically noted that an entity does not relieve the County of its burden simply by being paid to do the County's work and that CSF was almost entirely funded by the County. The trial court concluded that CSF was simply a mechanism through which the County satisfied some of its burden and that CSF did not prove that it was an institution of purely public charity.

On appeal, CSF questions whether an organization that meets other required criteria for designation as a purely public charity also meets the test of relieving government of some of its burden where its programs are funded by county agencies, local school districts, private donations and in-kind donations by the organization's qualified employ-

ees in the form of work for below-market compensation. We note that the question of whether an institution is one of purely public charity is a mixed question of law and fact on which the trial court's decision is binding absent abuse of discretion or lack of supporting evidence. *Hill School Tax Exemption Case*, 370 Pa. 21, 87 A.2d 259 (1952).

CSF contends that the trial court erred in concluding that, because the actual funds for its programs are derived largely from the County and, to a lesser extent, from private charity and from payments from some parents of enrolled students, CSF does not relieve government of some of its burden. CSF argues that it qualified for tax exempt status, even though nearly all its revenues were derived from government payments, because it provided valuable, unique and necessary services which the local government was unable to provide on its own. CSF asserts that in determining whether CSF was exempt the trial court erroneously focused on the amount of contributions received as compared to total income, implicitly requiring some threshold level of private donation.

■ Article 8, Section 2 of the Constitution of Pennsylvania provides in part: "(a) The General Assembly may by law exempt from taxation: ... (v) Institutions of purely private charity...." Pursuant to this authority, the legislature has exempted from local taxation "[a]ll hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity ... founded, endowed, and maintained by public or private charity...." Section 204(a)(3) of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(3). An institution that through its charitable activities relieves government of some of its burden confers a pecuniary benefit for which it receives a *quid pro quo* in the form of exemption from taxation. *Young Men's Christian Association of Germantown v. Philadelphia*, 323 Pa. 401, 187 A. 204 (1936). Any entity seeking exemption from tax has the affirmative burden to prove entitlement to that exemption. *Four Freedoms*

*House of Philadelphia, Inc. v. City of Philadelphia*, 443 Pa. 215, 279 A.2d 155 (1971).

■ Our Pennsylvania Supreme Court reviewed extensive case law concerning charitable tax exemptions and summarized the minimum constitutional requirements in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 21–22, 487 A.2d 1306, 1317 (1985):

[An] entity qualifies as a purely public charity if it possesses the following characteristics.

  (a) Advances a charitable purpose;

  (b) Donates or renders gratuitously a substantial portion of its services;

  (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

  (d) Relieves the government of some of its burden; and

  (e) Operates entirely free from private profit motive.

■ The criterion in dispute here is whether CSF relieves the government of some of its burden. For the purpose of charitable tax exemption, an institution relieves the government if it bears a substantial burden that would have otherwise fallen to the government. *Couriers–Susquehanna v. Dauphin County*, 165 Pa.Cmwlth. 192, 645 A.2d 290 (1994). A purely public charity does not cease to be such where it receives some government funding for its services. *City of Pittsburgh v. Board of Property Assessment, Appeals and Review*, 129 Pa. Cmwlth. 69, 564 A.2d 1026 (1989).

Presently, CSF asserts that it relieves government of some burden by providing residential, educational and counseling services to troubled youths at a lower cost than similar programs provided by the Commonwealth or the County. CSF cites *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review*, 536 Pa. 478, 640 A.2d 380 (1994), in support of its position. In *St. Margaret Seneca Place*, our Pennsylvania Supreme Court upheld the charitable tax exemption for a nursing home that paid one-third of the difference between the actual costs and the Medicaid payments for roughly one half of its residents. The remaining residents at the nursing home were self-

paying. The Supreme Court held that "[t]he [*Hospital Utilization Project* ] test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government." *St. Margaret Seneca Place*, 536 Pa. at 487, 640 A.2d at 385.

■ The evidence presented in *St. Margaret Seneca Place* clearly demonstrated that the nursing home paid a significant portion of the residents' costs. Such evidence is lacking in the present controversy. At trial, CSF did not establish that it pays a substantial portion of the costs of its programs. In pondering the issue of CSF's tax exempt status the trial court noted that "we do not know the total amount of charitable donations that CSF has received." Trial Court Opinion, December 5, 1994, (Opinion) at 6–7. The trial court "consider[ed] this information critical to ... determining whether CSF relieves the government of some of its burden and whether CSF is maintained by public or private charity." Opinion at 7. After considering the evidence presented, the trial court found that CSF failed to meet its burden because it did not prove that it substantially relieved the government of any burden. The trial court ultimately held that CSF "failed to present a sufficiently detailed and clear case to satisfy a finding consistent with *St. Margaret Seneca Place.*" Opinion, at 6.

Although there is no requirement that an institution carry the cost of programs which would otherwise be the government's responsibility, whether or not the institution "pays a substantial portion of the cost" of a governmental service is a significant factor in determining eligibility for the charitable tax exemption. *St. Margaret Seneca Place*, 536 Pa. at 487, 640 A.2d 380 at 385. The amount of charitable contributions received by CSF is crucial because whether CSF relieves some of the County's burden depends, at least in part, on absorbing the cost of programs which the County is obligated to provide. If CSF programs are not substantially funded by private contributions rather than government grants CSF is not bearing a substantial burden that would otherwise fall

to the government, but is essentially contracted by the County to provide those services for less cost. Tax exempt status is properly reserved for organizations which abate government costs, not for those who perform government responsibilities as independent contractors.

■ We recognize that CSF has provided the facilities and performed the day-to-day management of a school and a residential treatment center. CSF's endeavors are certainly worthwhile community services, but CSF does not relieve the County's burden merely by utilizing funds to provide help within the County. A project funded by the government and intended for public benefit is not entitled to a tax exemption simply because it is worthwhile and commendable. *G.D.L. Plaza Corporation v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987).

It is not enough under the *Hospital Utilization Project* test that an institution renders services to legitimate subjects of charity. In order to be tax exempt, the entity must prove, among other things, that it relieves government of some of its burden. The trial court was unconvinced by the evidence presented that CSF bore a substantial burden that would otherwise fall to the government. The trial court did not set forth specific percentage requirements for private donations, but did carefully assess the evidence of the funding received by CSF and found that CSF did not prove that its operations are maintained by means other than government subsidies. This finding weighed heavily in the trial court's analysis. Accordingly, the trial court determined that CSF did not present evidence sufficient to demonstrate that it meets the test for the only point in dispute, i.e., that CSF did not relieve government of some of its burden.

We affirm.

### ORDER

AND NOW, this 28th day of February, 1996, the order of the Court of Common

Pleas of Bucks County in the above-captioned matter is affirmed.

KELLEY, J., concurs in result only.

SMITH, Judge, dissenting.

I respectfully dissent from the decision of the Majority. The Majority affirms the trial court based on its determination that Community Service Foundation, Inc. (CSF) failed to demonstrate that it relieved the government of some of its burden. In so holding, the Majority states that CSF programs must be substantially funded by private contributions instead of government grants and that tax exempt status may not be accorded to those organizations which do not abate government costs.

The Pennsylvania Supreme Court reviewed extensive case law concerning charitable tax exemptions and summarized the minimum constitutional requirements in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 21–22, 487 A.2d 1306, 1317 (1985):

> [An] entity qualifies as a purely public charity if it possesses the following characteristics.
>
> (a) Advances a charitable purpose;
>
> (b) Donates or renders gratuitously a substantial portion of its services;
>
> (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;
>
> (d) Relieves the government of some of its burden; and
>
> (e) Operates entirely free from private profit motive.

In the present case, Bucks County conceded that CSF meets four of these criteria; the only one in dispute, as noted by the Majority, is whether CSF relieves the government of some of its burden.

The entity seeking a tax exemption of course has the affirmative burden of proving its entitlement. *Hospital Utilization Project.* The trial court noted the origin of this element in *Young Men's Christian Ass'n of Germantown v. Philadelphia*, 323 Pa. 401, 187 A. 204 (1936), where the Supreme Court stated that an institution that through its charitable activities relieves government of some of its burden confers a pecuniary benefit for which it receives a *quid pro quo* in the form of exemption from taxation. The Supreme Court elaborated upon this element of the test in *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review*, 536 Pa. 478, 487, 640 A.2d 380, 385 (1994):

> The [*Hospital Utilization Project*] test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government. The test is whether the institution bears a substantial burden that would otherwise fall to the government.

CSF cited the Supreme Court's decision in *St. Margaret Seneca Place*, noting that under the test set forth there, the court upheld the exemption where roughly half of the patients were self-paying, and the nursing home made up the one-third difference between the actual costs and the Medicaid payments received on behalf of the others. Under similar facts, this Court recently concluded that a nursing home that paid a portion of the costs for Medicaid patients, who comprised about 60% of its patients, met the test of relieving government of some of its burden. *Couriers–Susquehanna, Inc. v. Dauphin County*, 165 Pa.Cmwlth. 192, 645 A.2d 290 (1994). Neither of these cases imposed a specific monetary percentage or cash formula in regard to the criterion of relieving government of some of its burden.

CSF correctly asserts that the trial court erroneously focused on the amount of contributions received as compared to total income, implicitly requiring some threshold level of private funding. This error has been compounded by the Majority's interpretation of the law and its narrow focus upon charitable contributions to CFS. Further, CFS argues that no such threshold has ever been established and points out that the uniqueness of the service provided by the institution has been held to be sufficient, even where nearly all revenues were derived from government payments or from the recipients themselves. In *Vanguard School Tax Exemption Case*, 430 Pa. 378, 243 A.2d 323 (1968), where a

school provided unique services to children with learning and emotional disabilities, the Supreme Court stated that strict acceptance of an institution's relief of tax burdens as the only measure of its relief of government responsibilities has never been required.

In a case where an institution concededly renders services to legitimate subjects of charity, the issues of relieving government of some of its burden and of whether the institution is maintained through public or private charity may become intertwined. From the earliest cases, however, courts have recognized that receipt of some payments does not necessarily destroy the character of an entity as a "purely public charity." In *Episcopal Academy v. Philadelphia,* 150 Pa. 565, 574, 25 A. 55, 57 (1892), the Supreme Court stated:

> We are now disposed to go further, and say that an institution that is in its nature and purposes a purely public charity does not lose its character as such under the tax laws if it receives a revenue from the recipients of its bounty sufficient to keep it in operation. It must not go beyond self-support. When a charity embarks in business for profit it is liable to taxation like any other business establishment; but so long as the trustees of the school manage it as a charity, giving the benefit of what might otherwise be profit to the reduction of tuition fees or the increase of the number of free scholars in furtherance of the "education of youth," the corpus of the trust, the schoolhouse, is entitled to exemption.

*See also West Allegheny Hospital v. Board of Property Assessment, Appeals and Review,* 500 Pa. 236, 455 A.2d 1170 (1982) (citing *Episcopal Academy* and expressly disapproving language in *Y.M.C.A. of Germantown*

that "charity" within the meaning of Section 204(a)(3) requires only a nominal charge to the beneficiaries).

In the present case, the Board did not dispute before the trial court that CSF met four of the five *Hospital Utilization Project* criteria, including the second—that it donates or renders gratuitously a substantial portion of its services. This point alone renders the Board's position that CSF does not relieve government of some of its burden highly problematic, where the services involved are those that government is required to provide.[1] The trial court made findings that CSF compensates its employees at rates lower than those for similar government positions and that CSF has on occasion continued to provide services after funding ran out, but the court made no reference to undisputed testimony from the same witnesses (the Board presented no witnesses) regarding the relative cost of CSF's operations.

Mr. Wachtel testified that the per diem rate for the day program included $40.95 per day for day treatment and $27.00 per day for education, which is lower than the local school tuition rate CSF is permitted by statute to charge.[2] He testified that the rate for the residential program was $91.60, which included day treatment for no additional charge, and that CSF is able to charge less because of the lower salaries it pays as compared to government positions. The Chief Probation Officer testified that CSF's foster home and day treatment program cost comparably less than the county group home or foster home system or residential treatment at a large facility operated by the Commonwealth, such as the Youth Development Centers at Bensalem or New Castle, where costs are in the range of $150 to $175 per day for what he termed "custodial care."

---

1. For a clear example of failure to show relief of government burden, see *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne,* 149 Pa.Cmwlth. 349, 613 A.2d 125 (1992). There the Court held that religious summer camps were not entitled to exemption because the record failed to establish that the government is obligated to provide social, recreational or educational activities for children during summer months or that government would otherwise have to provide the food and medical services supplied by the camps.

2. *See* Section 914.1–A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* added by Section 3 of the Act of April 6, 1980, P.L. 86, 24 P.S. § 9–964.1. This Section authorizes intermediate units and local school districts to contract with private residential rehabilitative institutions for education services and provides that the full tuition charge of the school district in which the institution is located shall be paid by the school district of the child's residence.

The Majority erred in sustaining the trial court's conclusion that CSF presented no evidence that it pays a substantial portion of the cost for any of the students that it houses and educates. In accordance with the Supreme Court's holding on this point in *St. Margaret Seneca Place*, CSF has, at a minimum, provided the facilities and performed the day-to-day management of this school and residential treatment center which the government is statutorily bound to provide. Although the trial court found that CSF compensates its employees at rates lower than those for government positions and charges less for its services than similar institutions, the court erred in failing to conclude that these facts together amount to a form of subsidization.

In focusing too narrowly on the charitable donations received by CSF, the trial court and the Majority have disregarded another aspect of *St. Margaret Seneca Place*. There the Supreme Court stated that factors other than those established in *Hospital Utilization Project* supported the conclusion that the nursing home at issue was a purely public charity entitled to tax exemption. After concluding that the parent health system made a charitable gift with an eleemosynary motive in a contribution to help found the home, the Court stated:

> Moreover, it is not indispensable that the institution be maintained by charity. As we noted in *West Allegheny Hospital, supra*, "[o]ne would have to be removed from modern-day realities to believe that such costs are easily subsidized [by charitable donations], even in part." 500 Pa. at 241 n. 4, 455 A.2d at 1172 n. 4.

*St. Margaret Seneca Place*, 536 Pa. at 489, 640 A.2d at 385–386. It is evident that CSF presented a legally sufficient basis under the Supreme Court's decisions to demonstrate that it meets the test for the only point in dispute, i.e., that CSF relieves government of some of its burden. Therefore, the order of the trial court should be reversed.

DOYLE, J., joins in this dissent.