813 A.2d 680

COMMUNITY OPTIONS, INC., Appellant,

v.

BOARD OF PROPERTY ASSESSMENT,
Appeals and Review, Appellee.

Supreme Court of Pennsylvania.

Argued March 5, 2002.

Decided Dec. 31, 2002.

Andrea Geraghty, Pittsburgh, for Community Options, Inc.

Roland Morris, David Edwin Loder, Philadelphia, for The Hospital and Healthsystem Association of PA.

George Timothy Bell, for The Association of Independent Colleges and Universities.

Craig C. Stephens, Pittsburgh, for Board of Property Assessment, Appeals and Review.

Robert W. Goehring, Pittsburgh, for Borough of Churchill.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Chief Justice ZAPPALA.

Appellant, Community Options, Inc., is a New Jersey non-profit corporation that operates in Pennsylvania, eight other states and the District of Columbia. Appellant's mission is to develop housing and employment related services for individuals with a diagnosis of mental retardation, many of whom also have severe physical disabilities. Appellant obtains housing in residential neighborhoods in which the individuals whom it serves then reside under twenty-four hour supervision. Appellant owns and operates a number of group homes located throughout Allegheny County, Pennsylvania.

In 1996 and 1997, Appellant filed applications with the Board of Property Assessment, Appeals and Review (Board), seeking tax exempt status for its properties located throughout Allegheny County. The Board denied the applications. Appellant appealed the determination of the Board to the Allegheny County Court of Common Pleas, claiming it was entitled to a tax exemption pursuant to Article VIII, Section 2(a)(v) of the Pennsylvania Constitution [1] and the provisions of the General County Assessment Law,[2] and that the Board's

---

1. Article VIII, Section 2 states:
   (a) The General Assembly may by law exempt from taxation:
   &ast; &ast; &ast;
   (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.
   Pa. Const. art. VIII, § 2(a)(v).

2. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–1 to –602.

classification of its properties as taxable violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution [3] and the Uniformity Clause of the Pennsylvania Constitution.[4]

The trial court affirmed the orders of the Board denying Appellant's applications for tax-exempt status for its properties for the years 1996 and 1997, and granted tax-exempt status to Appellant's properties for the year 1998 and future years. Specifically, the trial court determined that with regard to the years 1996 and 1997, under this Court's interpretation of Article VIII, Section 2 of the Pennsylvania Constitution in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985), and the Commonwealth Court's interpretation of *Hospital Utilization Project* in *Community Service Foundation, Inc. v. Bucks County Bd. of Assessment and Revision of Taxes,* 672 A.2d 373 (Pa.Cmwlth.1996), Appellant's properties were not entitled to tax-exempt status. With regard to the year 1998 and future years, the trial court determined that, pursuant to the provisions of the Institutions of Purely Public Charity Act (Charity Act),[5] Appellant's properties were entitled to tax-exempt status. Finally, the trial court rejected Appellant's claims under the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution.

Appellant and Appellee the Borough of Churchill filed cross-appeals in the Commonwealth Court. The Commonwealth Court concluded that the trial court did not err in determining that Appellant's properties were not entitled to tax-exempt status for the years 1996 and 1997; however, the Commonwealth Court went on to conclude that once the trial court determined that Appellant did not meet the constitutional definition of "purely public charity," it was unnecessary to consider whether it met the statutory definition of "purely public charity" as outlined in the Charity Act, and the trial

3.  U.S. Const. amend. XIV, § 1, cl. 4.

4.  Pa. Const. art. VIII, § 1.

5.  Act of November 26, 1997, P.L. 508, imd. effective, 10 P.S. §§ 371–385.

court therefore erred in determining that Appellant's properties were entitled to tax-exempt status for the year 1998 and future years. Finally, the Commonwealth Court determined that the trial court did not err in failing to grant tax-exempt status to Appellant's properties based on the its Equal Protection Clause and Uniformity Clause claims. Accordingly, the Commonwealth Court affirmed the portion of the trial court order affirming the Board's denial of a tax exemption for Appellant's properties for the years 1996 and 1997, and reversed the portion of the trial court order reversing the Board's denial of a tax exemption of Appellant's properties for the year 1998 and future years.

This Court granted Appellant's petition for allowance of appeal to consider whether Appellant's properties are entitled to the tax exemption for the year 1998 and future years.[6]

▉▉▉▉ An entity seeking a statutory exemption for taxation must first establish that it is a "purely public charity" under Article VIII, Section 2 of the Pennsylvania Constitution before the question of whether that entity meets the qualifications of a statutory exemption can be reached. *G.D.L. Plaza Corp. v. Council Rock Sch. Dist.*, 515 Pa. 54, 526 A.2d 1173, 1175 (1987); *Hospital Utilization Project*, 487 A.2d at 1312. In *Hospital Utilization Project*, this Court set forth a five-part test for determining whether an entity qualifies as a "purely public charity" under the Pennsylvania Constitution:

[A]n entity qualifies as a purely public charity if it possesses the following characteristics.

  (a) Advances a charitable purpose;

  (b) Donates or renders gratuitously a substantial portion of its services;

6. Appellant sought allocatur solely as it relates to the tax years 1998 and following. Thus, Appellant has not pursued its claim that its properties are entitled to the tax exemption for the years 1996 and 1997. *See* Brief for Appellant at 23 n. 3. Additionally, on appeal to this Court, Appellant has not pursued its claim of entitlement to tax-exempt status based on the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution. Accordingly, we do not consider those claims here.

    (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

    (d) Relieves the government of some of its burden; and

    (e) Operates entirely free from private profit motive.

487 A.2d at 1306. The question of whether an entity is a "purely public charity" is a mixed question of law and fact on which the trial court's decision is binding absent an abuse of discretion or lack of supporting evidence. *G.D.L. Plaza Corp.*, 526 A.2d at 1175; *Hill Sch. Tax Exemption Case*, 370 Pa. 21, 87 A.2d 259, 263 (1952). Only the fourth prong of this test, i.e., whether Appellant relieves the government of some of its burden, is at issue in this appeal.

With regard to the issue of whether Appellant relieves the government of some of its burden, the trial court found the Commonwealth Court's decision in *Community Service Foundation*, which interpreted the fourth prong of the *Hospital Utilization Project* test, controlling. In *Community Service Foundation*, a non-profit corporation that provided residential, educational and counseling services to troubled youth sought tax exemptions as an institution of "purely public charity" under the General County Assessment Law for three of its properties located in Bucks County, Pennsylvania. The trial court ruled that the properties were not exempt from taxation and concluded that Community Service Foundation had not met its burden of proving that it substantially relieved the government of its burden because the foundation was simply a mechanism through which Bucks County satisfied some of its burden with county funds. The Commonwealth Court affirmed, stating:

Although there is no requirement that an institution carry the cost of programs which would otherwise be the government's responsibility, whether or not the institution "pays a substantial portion of the cost" of a governmental service is a significant factor in determining eligibility for the charitable tax exemption. [*St. Margaret Seneca Place v. Board of Prop. Assessment, Appeals and Review*, 536 Pa. 478, 640 A.2d 380, 385 (1994).] The amount of charitable contributions received by [Community Service Foundation] is crucial

because whether [Community Service Foundation] relieves some of the County's burden depends, at least in part, on absorbing the cost of programs which the County is obligated to provide. If [Community Service Foundation] programs are not substantially funded by private contributions rather than government grants [Community Service Foundation] is not bearing a substantial burden that would otherwise fall to the government, but is essentially contracted by the County to provide those services for less cost. Tax exempt status is properly reserved for organizations which abate government costs, not for those who perform government responsibilities as independent contractors.

*Community Service Foundation*, 672 A.2d at 376.

In this case, the trial court determined that, because it was constrained to follow the Commonwealth Court's decision in *Community Service Foundation*, the trial court was bound to conclude that Appellant did not relieve the government of some of its burden and therefore did not qualify as a "purely public charity." However, for the reasons that follow, we reject the Commonwealth Court's analysis in *Community Service Foundation* as inconsistent with the *Hospital Utilization Project* test as a matter of law. Although the trial court did not have the benefit of our analysis and therefore followed the precedent of the intermediate appellate court, we nevertheless find its decision that Appellant did not relieve the government of some of its burden under the *Hospital Utilization Project* test not to be supported by substantial evidence.

By narrowly focusing on the amount of contributions received as compared to total income in *Community Service Foundation*, the Commonwealth Court misconstrued this Court's holding in *St. Margaret Seneca Place v. Board of Prop. Assessment, Appeals and Review*, 536 Pa. 478, 640 A.2d 380 (1994). There, we stated:

The [*Hospital Utilization Project*] test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government. The test is whether the

institution bears a substantial burden that would otherwise fall to the government.

640 A.2d at 385. Our decision in *St. Margaret Seneca Place* did not establish a specific threshold level of private funding as a criterion for the relieving the government of some of its burden prong, and the Commonwealth Court erred in coming to such a conclusion. Indeed, as pointed out in the dissent in *Community Service Foundation*, there are other relevant factors in this analysis, among which include, but are not limited to, whether the institution compensates its employees at rates lower than those for similar government positions and whether the institution charges less for its services than other similar institutions. *See Community Service Foundation*, 672 A.2d at 377–79 (Smith, J., dissenting); *see also City of Washington v. Board of Assessment Appeals and Washington and Jefferson College*, 550 Pa. 175, 704 A.2d 120, 125, n. 8 (1997) (stating that the relieving the government of some of its burden prong can be satisfied when "costs are far less than the costs that would be incurred if state institutions were called upon to provide the same . . . services . . .").

Turning to the instant case, Appellant points out that the Commonwealth of Pennsylvania has a statutory duty to provide for the care of individuals diagnosed with mental retardation under the Mental Health and Mental Retardation Act of 1966.[7] Thus, were it not for institutions such as Appellant, the full burden of providing facilities and services for the care of individuals diagnosed with mental retardation would rest on the government.

Although it is conceded that the vast majority of Appellant's yearly operating budget is provided through government funding, the acquisition of housing in residential neighborhoods and the renovation of such housing in preparation for occupancy by individuals with severe disabilities all occurs without government funding. Moreover, in Appellant's absence,

the county or state would have to modify its existing facilities, and acquire significant real estate in the communities,

---

7. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, art. I, § 101, effective January 1, 1967, 50 P.S. §§ 4101–4704.

and add additional staff, with different training, in order to accommodate the residents. This would entail substantial cost given the high daily operating costs and the expense of a government operated facility. [Appellant] does not merely provide the same services that government would provide, but it provides services that the government is not capable of providing.

Brief for Appellant at 27.

Appellant receives Title 19 Medicare funds for each resident, which are distributed through Allegheny County via per diem payments, i.e., at a rate per day, per resident. Just as in *Mars Area Sch. Dist. v. United Presbyterian Women's Assoc. of North America,* 554 Pa. 324, 721 A.2d 360 (1998), "the costs incurred by government would be much greater were it necessary for counties to provide the grounds and facilities, and incur the operating deficits and depreciation expenses, rather than simply pay the existing per diem fees...." *Id.* at 362.

■ Accordingly, based on these factors, we conclude that Appellant relieves the government of some of its burden, satisfying the fourth prong of the *Hospital Utilization Project* test, and therefore qualifies under the Pennsylvania Constitution as a "purely public charity." Having concluded that Appellant qualifies as a "purely public charity" under Article VIII, Section 2 of the Pennsylvania Constitution, the question then becomes whether Appellant meets the qualifications for tax-exempt status under the Charity Act.

Section 372 of the Charity Act states that the intent of the Act is to provide "standards to be applied uniformly throughout this Commonwealth for determining eligibility for exemption from State and local taxation which are consistent with traditional legislative and judicial applications of the constitutional term 'institutions of purely public charity.'" 10 P.S. § 372(b). Section 375(a) of the Charity Act, titled "Criteria for institutions of purely public charity", states that an institution of purely public charity is an institution that meets the criteria set forth in subsections (b), (c), (d), (e) and (f). Each of the five subsections to which Section 375(a) refers has an

opening sentence that tracks the language of one of the *Hospital Utilization Project* test prongs.

The fourth prong of the *Hospital Utilization Project* test, which is at issue here, appears in Section 375(f):

(f) Government service.—The institution must relieve the government of some of its burden. This criterion is satisfied if the institution meets any one of the following:

(1) Provides a service to the public that the government would otherwise be obligated to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.

(2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.

(3) Receives on a regular basis payments for services rendered under a government program if the payments are less than the full costs incurred by the institution, as determined by generally accepted accounting principles.

(4) Provides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, educational or physical objectives.

(5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section [375].

(6) Has a voluntary agreement under section [377 which allows a political subdivision to execute a voluntary agreement with an institution that owns real property within the political subdivision].

10 P.S. § 375(f).

The question of whether Appellant's properties meet the qualifications for tax-exempt status under the above quoted language of the Charity Act has never been disputed by

Appellees, the taxing bodies. In fact, throughout this litigation, the taxing bodies have conceded such.

The opinions of the trial court and Commonwealth Court below relied on the Commonwealth Court's interpretation of *Hospital Utilization Project* in *Community Service Foundation* as the basis for concluding that Appellant did not qualify as a "purely public charity" under the Pennsylvania Constitution. Based on the conclusion that Appellant did not satisfy the constitutional definition of "purely public charity" and an examination of the language of the Charity Act, the trial court reasoned that the Charity Act "definition of purely public charity [exempted] certain institutions operating programs with government funds that would not qualify as institutions of purely public charity under the judicial [*Hospital Utilization Project* test] standards." Trial Ct. op. at 16. Nevertheless, the trial court posited that the Legislature acted within its constitutional authority in enacting the Charity Act,[8] ultimately concluding that for the year 1998 and future years Appellant's properties were entitled to tax-exempt status.

Appellee the Borough of Churchill thereafter argued in its cross-appeal before the Commonwealth Court that, since Appellant did not meet the constitutional definition of "purely public charity" as set forth in the *Hospital Utilization Project* test, it was unnecessary to consider whether it met the statutory definition of "purely public charity" as outlined in the Charity Act. The Commonwealth Court agreed and reversed the trial court as to that issue. In its brief to this Court, Appellant responds by arguing that "the Commonwealth Court ignored the definition of purely public charity provided by the legislature in [the Charity Act] and did not

8. Specifically, the trial court stated:
    Because *Community Service Foundation, Inc.* did not consider the constitutionality of legislation written to provide tax exempt status to institutions performing government services with government funds, I reject the argument of the taxing bodies that this case is controlling. There is, in fact, no case law providing any clear guidance as to whether the provisions of [the Charity Act] exempting from taxation institutions performing government services with government funds clearly, palpably, and plainly violate the Constitution.
    Trial Ct. op. at 20.

give the legislature the deference to which it is entitled."
Brief for Appellant at 20.

■   However, we need not reach this argument because we
have rejected the Commonwealth Court's reasoning in *Com-
munity Service Foundation* and the conclusion that Appellant
is not a "purely public charity" under the *Hospital Utilization
Project* test, *see supra.*   Having established that Appellant is
a "purely public charity" under Article VIII, Section 2 of the
Pennsylvania Constitution, we turn to the question of whether
that entity meets the qualifications of a statutory exemption
under the Charity Act, *see G.D.L. Plaza Corp.*, 526 A.2d at
1175; *Hospital Utilization Project*, 487 A.2d at 1312, a ques-
tion which has never been disputed by the taxing bodies and
thus has been answered in the affirmative by concession of the
taxing bodies.

Accordingly, we reverse the portion of the Commonwealth
Court order that reversed the trial court order granting a tax
exemption to Appellant's properties for the year 1998 and
future years.[9]   The portion of the trial court order granting a
tax exemption to Appellant's properties for the year 1998 and
future years is reinstated.

Justice NIGRO files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Justice
EAKIN joins.

NIGRO, Justice, concurring.

I have consistently taken the position that not-for-profit
organizations that exhibit the traditional characteristics of a
charity satisfy the five-part test this Court set forth in *Hospi-
tal Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d
1306 (1985)("HUP"), and are therefore entitled to a state tax
exemption. *See Mars Area Sch. Dist. v. United Presbyterian*

9.  As Appellant sought allocatur solely as it relates to the tax years 1998
and following, *see supra* at note 6, we leave undisturbed the portion of
the Commonwealth Court order that affirmed the trial court order
denying a tax exemption to Appellant's properties for the years 1996
and 1997.

*Women's Ass'n of North America*, 554 Pa. 324, 721 A.2d 360 (1998)(women's religious organization operating residential facility for dependant and delinquent youth). Likewise, I have consistently opined that an exemption should not be granted to those who do not exhibit such characteristics. *See Wilson Area Sch. Dist. v. Easton Hosp.*, 561 Pa. 1, 747 A.2d 877 (2000) (Nigro, J., dissenting) (hospital with private profit motive); *City of Washington v. Board of Assessment Appeals*, 550 Pa. 175, 704 A.2d 120 (1997)(Nigro, J., dissenting) (private college which primarily serves only those who can afford its significant tuition); *Unionville–Chadds Ford Sch. Dist. v. Chester County Bd. of Assessment Appeals*, 552 Pa. 212, 714 A.2d 397 (1998) (Nigro, J., dissenting) (private horticultural facility which, at best, supplements limited cultural facilities government is obliged to provide).

Here, the record clearly supports a finding that Community Options, Inc. comports with traditional notions of a charity. In caring for individuals with physical and mental disabilities, it gratuitously provides services to individuals who are legitimate subjects of charity and relieves the government of the burden of otherwise caring for those same individuals. Moreover, it does so without reaping a profit and without paying its executives exorbitant salaries that would belie the organization's purely charitable purpose. *See* R.R. 173a (listing 1995 salaries of three highest paid employees). Accordingly, I agree that Community Options, Inc. satisfies the five-part test in *HUP* and is entitled to a state tax exemption.

SAYLOR, Justice, dissenting.

While I agree with the majority's formulation of the standard to be applied in evaluating whether an entity relieves the government of some of its burden, I would not reach the merits of whether Appellant satisfies this standard. Instead, my preference would be to remand to the common pleas court, which did not consider the appropriate range of factors because it was bound by *Community Service Found., Inc. v. Bucks County Bd. of Assessment and Revision of Taxes*, 672 A.2d 373 (Pa.Cmwlth.1996), particularly as the determination

of whether an entity qualifies as a purely public charity poses a mixed question of law and fact that is to be determined by the common pleas court in the first instance. *See Mars Area Sch. Dist. v. United Presbyterian Women's Ass'n of N. Am.,* 554 Pa. 324, 326, 721 A.2d 360, 361 (1998); *Unionville–Chadds Ford Sch. Dist. v. Chester County Bd. of Assessment Appeals,* 552 Pa. 212, 217, 714 A.2d 397, 399 (1998).

Justice EAKIN joins this dissenting opinion.