**FAYETTE RESOURCES, INC.,**
a Pennsylvania non-profit
corporation,

v.

**FAYETTE COUNTY BOARD OF ASSESSMENT APPEALS, and North Union Township, Laurel Highlands Area School District and Fayette County**

**Appeal of: Fayette County Board
of Assessment Appeals.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2014.
Decided Dec. 23, 2014.

842

John M. Zeglen, Uniontown, for appellant.

Kenneth J. Yarsky, II, Pittsburgh, for appellees Fayette Resources, Inc. and Fayette County.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This is an appeal filed by Fayette County Board of Assessment Appeals (the Board) from the order of the Court of Common Pleas of Fayette County (trial court) sustaining consolidated tax assessment appeals filed by Fayette Resources, Inc. (Resources) and holding that Resources is entitled to a real estate tax exemption as a "purely public charity." Because Resources failed to meet its burden to prove that it satisfies all of the requirements for tax exemption as a "purely public charity" under our Supreme Court's decision in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985), we reverse.

Resources is a Pennsylvania non-profit corporation, exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code. (Trial Court Hearing Transcript (H.T.) at 27–29, Reproduced Record (R.R.) at 69a–71a; Resources Ex. A, R.R. at 94a–118a.) Resources operates group homes for intellectually disabled individuals (persons with an IQ of 70 or less), which generally house three to four intellectually disabled adults per home with staff members on site in rotating shifts to assist them. (H.T. at 10–14, 19–22, R.R. at 52a–56a, 61a–64a.) Resources also provides services for the intellectually disabled, including training in daily living skills and training for employment. (*Id.* at 10, 12–13, R.R. at

52a, 54a–55a.) Resources has approximately 80 group homes in Fayette County and other counties in western Pennsylvania, and has over 700 employees. (*Id.* at 11, 16, R.R. at 53a, 58a.).

In 2012, Resources filed requests for exemption from real estate taxes for 15 properties that it owns that are located in six municipalities and four ·school districts in Fayette County. All but one of those properties are group homes and the other property is a training center, where Resources runs programs for the intellectually disabled persons that it serves and trains its staff. (*Id.* at 11–13, 55, R.R. at 53a–55a, 57a.) The Board denied the requests for exemption and Resources filed separate appeals from the denials, which were consolidated by the trial court. On November 26, 2013, the trial court held an evidentiary hearing in the consolidated appeals at which Resources and the Board appeared.

At the trial court hearing, the only evidence introduced by Resources consisted of the testimony of its Director of Operations and copies of its Articles of Incorporation and By–Laws and the Internal Revenue Service notification that it qualified for Section 501(c)(3) federal tax exemption. Resources' Director of Operations testified that most of Resources' funding is through the state Department of Public Welfare.[1] (H.T. at 23–24, R.R. at 65a–66a.) Resources has a contract with the state to provide the residential housing and other services for intellectually disabled adults and is paid by the Department of Public Welfare with moneys coming primarily from federal Medicaid funds. (*Id.* at 13–14, 23–24, R.R. at 55a–56a, 65a–66a.) Individuals eligible for this funding do not pay anything to Resources, but where individuals do not qualify for government support, they or someone on their behalf must pay for the services. (*Id.* at 13–14, 24–25, 37, R.R. at 55a–56a, 66a–67a, 79a.) Resources does not provide any free services because federal law prohibits it from providing services to anyone at a rate lower than the Medicaid payment rates. (*Id.* at 37, 39–40, R.R. at 79a, 81a–82a.) No evidence was submitted at the trial court hearing of any charitable contributions received or used by Resources in its operations, volunteer services or other donations of any kind.

Resources' Director of Operations testified that the majority of Resources' employees work directly with the individuals that it serves. (*Id.* at 16–17, R.R. at 58a–59a.) The workers in Resources' group homes are paid .approximately $9 to $11 per hour. (*Id.* at 22, R.R. at 64a.) Resources' CEO is paid an annual salary of approximately $125,000 or $130,000 and its Director of Operations' salary is approximately $83,000. (*Id.*) Resources has no shareholders and no one at Resources receives any remuneration from it other than salaries. (*Id.* at 36, R.R. at 78a.)

Resources' Director of Operations admitted that in its fiscal year ending June 30, 2010, Resources' gross revenues of approximately $24 million exceeded its expenses by $820,000. (*Id.* at 38–39, R.R. at 80a–81a.) He testified that Resources uses its surplus funds to acquire and fix up houses for group homes and to cover losses in years when state funding is insufficient. (*Id.* at 25–26, 39, R.R. at 67a–68a, 81a.) Resources' Articles of Incorporation and By–Laws prohibit the use of net earnings to benefit its directors and officers or

1. Subsequent to the trial hearing and the filing of the instant appeal, the name of the Department of Public Welfare has been changed to the Department of Human Services. *See* Act of June 13, 1967, P.L. 31, *amended by* Act of September 24, 2014, P.L. ——, No. 132, § 2, 62 P.S. § 103 (effective November 24, 2014).

other private persons and require that on dissolution any assets be distributed to another charitable institution or to a government entity for a public purpose. (Resources Ex. A, R.R. at 98a, 116a; H.T. at 28–29, R.R. at 70a–71a.) No evidence was submitted to the trial court, however, as to how the government payments and other fees that Resources receives for providing care and services compare to the total cost of such care and services, including the acquisition and rehabilitation of the houses. No financial statements were admitted into evidence. Although the parties referred to Resources' Form 990 federal tax return for fiscal year ending June 2010 at the hearing, it was not offered in evidence by either party and is not in the record.

On February 21, 2014, the trial court issued an opinion and order ruling that that Resources is entitled to a real estate tax exemption as a "purely public charity." The Board timely appealed, contending that Resources did not prove that it satisfies the constitutional and statutory requirements for exemption from state and local taxes.[2]

Section 204(a)(3) of the General County Assessment Law[3] provides:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: .

\* \* \*

(3) All ... associations and institutions of ... benevolence, or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose....

72 P.S. § 5020–204(a)(3).

 An entity does not qualify for this charitable tax exemption merely because it is a non-profit corporation and a tax-exempt charity for federal income tax purposes. *Hospital Utilization Project,* 487 A.2d at 1316; *Hahn Home v. York County Board of Assessment Appeals,* 778

---

**2.** The Board served its notice of appeal on all of the parties listed in the trial court's consolidated caption, but did not serve it on several other municipalities and school districts that were named in some of Resources' 15 consolidated appeals to the trial court as interested parties. Although it did not file any application to quash the appeal, Resources argues in its brief that the appeal should be quashed for failure to serve the notice of appeal on all parties. We deny this request. Rule 906(a) of the Rules of Appellate Procedure requires that the appellant serve its notice of appeal on "[a]ll parties to the matter in the trial court." Pa. R.A.P. 906(a)(1). Failure to comply with these requirements is not, however, a fatal defect that requires dismissal of an appeal. Pa. R.A.P. 902 ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate"); *In re Corignani,* 873 A.2d 790, 793 (Pa.Cmwlth.

2005); *Meadows v. Goodman,* 993 A.2d 912, 914 (Pa.Super.2010). The record is clear that the municipalities and school districts in question, none of whom participated in the trial court hearing, were all served with briefs in this appeal and had notice of this appeal four months before oral argument. In those four months, none of those entities sought to participate in this appeal. Moreover, these parties are not adversely affected by allowing this appeal to proceed, as the trial court's order adversely affects their revenue and any reversal could only benefit them. Given the fact that all parties have in fact received notice of the appeal and no party has been prejudiced by the Board's failure to serve its notice of appeal on all parties, dismissal of the appeal is not warranted.

**3.** Act of May 22, 1933, P.L. 853, § 204(a)(3), *as amended,* 72 P.S. § 5020–204(a)(3).

A.2d 755, 759 (Pa.Cmwlth.2001). To qualify for a charitable exemption from state or local taxes, an entity must first prove that it is a "purely public charity" under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution. *Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals*, 615 Pa. 463, 44 A.3d 3, 9 (2012); *Community Options, Inc. v. Board of Property Assessment*, 571 Pa. 672, 813 A.2d 680, 683 (2002); *Hospital Utilization Project*, 487 A.2d at 1312; *Camp Hachshara Moshava of New York v. Wayne County Board for Assessment and Revision of Taxes*, 47 A.3d 1271, 1275 (Pa. Cmwlth.2012).

 To satisfy this constitutional prerequisite, the entity seeking a charitable tax exemption must demonstrate that it meets all of the following five requirements set forth by the Pennsylvania Supreme Court in *Hospital Utilization Project*, referred to as the "*HUP* test": (1) it must advance a charitable purpose; (2) it must donate or render gratuitously a substantial portion of its services; (3) it must benefit a substantial and indefinite class of persons who are legitimate subjects of charity; (4) it must relieve the government of some of its burden; and (5) it must operate entirely free from private profit motive. *Mesivtah Eitz Chaim of Bobov, Inc.*, 44 A.3d at 5, 9; *Community Options, Inc.*, 813 A.2d at 683; *Hospital Utilization Project*, 487 A.2d at 1317; *Camp Hachshara Moshava of New York*, 47 A.3d at 1275; *Hahn Home*, 778 A.2d at 760. The burden is on the seeker of the exemption to establish each of those elements. *Hospital Utilization Project*, 487 A.2d at 1312; *Camp Hachshara Moshava of New York*, 47 A.3d at 1275–76. Whether an entity qualifies as a "purely public charity" under the *HUP* test is a mixed question of law and fact on which the trial court's decision

must be upheld absent an abuse of discretion or lack of supporting evidence. *Community Options, Inc.*, 813 A.2d at 683; *Camp Hachshara Moshava of New York*, 47 A.3d at 1275.

 If the entity satisfies the *HUP* test, it must then also show that it meets the statutory requirements of the Institutions of Purely Public Charity Act (the Charity Act).[4] *Community Options, Inc.*, 813 A.2d at 685; *Camp Hachshara Moshava of New York*, 47 A.3d at 1275–76. Section 5 of the Charity Act imposes five requirements that track the five prongs of the *HUP* test and sets forth specific criteria by which the entity may meet those requirements. 10 P.S. § 375(a)-(f). However, the Charity Act's provisions are not identical to the *HUP* test, and an entity's status as a "purely public charity" under the Charity Act cannot make it eligible for tax exemption if it does not satisfy all of the constitutional requirements of the *HUP* test. *Mesivtah Eitz Chaim of Bobov, Inc.*, 44 A.3d at 9; *In re Appeal of Dunwoody Village*, 52 A.3d 408, 419 (Pa. Cmwlth.2012); *Camp Hachshara Moshava of New York*, 47 A.3d at 1275, 1281.

 The trial court found that Resources satisfied the first and third requirements of the *HUP* test because it advances a public purpose by providing staffed homes for the intellectually disabled and those intellectually disabled persons are legitimate subjects of charity. (Trial Court Op. at 3.) Those determinations are supported by both the evidence before it and the law. Providing housing, care and training to intellectually disabled individuals who cannot care for themselves and most of whom are Medicaid-eligible constitutes a charitable purpose and benefit to an indefinite class of persons who are

4. Act of November 26, 1997, P.L. 508, *as* *amended*, 10 P.S. §§ 371–385.

legitimate subjects of charity. *Community Options, Inc.,* 813 A.2d at 688 (Nigro, J., concurring) (housing and services for intellectually disabled is charitable purpose and benefits indefinite class of persons who are legitimate subjects of charity); *Grace Center Community Living Corp. v. County of Indiana,* 796 A.2d 1008, 1013–14 (Pa. Cmwlth.2002) (elderly are proper objects of charity even if not impoverished because they have special care needs); *Hahn Home,* 778 A.2d at 760–63 (residential home for elderly women who could not care for themselves was charitable purpose and benefited indefinite class of persons who are legitimate subjects of charity). The fact that Resources receives government or private payment for the care and services it provides does not negate its charitable purpose or its benefit to persons who are legitimate subjects of charity. *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review,* 536 Pa. 478, 640 A.2d 380, 382–84 (1994).

The trial court also found that Resources satisfied the fourth and fifth requirements of the *HUP* test because it relieved the government of a statutory duty and burden to care for the intellectually disabled and had no private profit motive. (Trial Court Op. at 3.) Those determinations are likewise supported by both the record and the law.

■ In *Community Options,* our Supreme Court held that a non-profit corporation that provided supervised group homes and services for the intellectually disabled satisfied the *HUP* test's fourth requirement because the government has "a statutory duty to provide for the care of individuals diagnosed with mental retardation under the Mental Health and Mental Retardation Act of 1966,"[5] and such an entity relieves the government of

the burden of providing facilities for the care of those individuals. 813 A.2d at 685. The Board argues that Resources does not relieve the government of a burden because it is fully compensated by government payments, relying on *Community Service Foundation, Inc. v. Bucks County Board of Assessment and Revision of Taxes,* 672 A.2d 373 (Pa.Cmwlth.1996). That contention is without merit. In *Community Options,* the Supreme Court specifically rejected the *Community Service Foundation* analysis and concluded that providing supervised group homes for the intellectually disabled relieved the government of some of its burden, even though the government payments compensated the provider for the residents' daily care and "the vast majority of [its] yearly operating budget is provided through government funding." 813 A.2d at 684–85, 687. The services that Resources provides are indistinguishable from those in *Community Options* and therefore satisfy the *HUP* test's requirement that it relieve the government of some of its burden.

■ The Board argues that Resources could not meet the fifth requirement of the *HUP* test because it had an $820,000 surplus for the fiscal year ending in June 2010. We do not agree. The fact that an entity has surplus revenue does not preclude a finding that it operates entirely free from private profit motive. *Wilson School District v. Easton Hospital,* 561 Pa. 1, 747 A.2d 877, 880–81 (2000); *Hahn Home,* 778 A.2d at 763. The requirement of the *HUP* test that the entity operate entirely free from profit motive is satisfied where any surplus is reinvested to fund the entity's charitable purposes or is spent supporting or furthering those charitable purposes and the surplus does not directly or indirectly benefit private individuals. *Wilson School District,* 747

5. Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §§ 4101–4704.

A.2d at 880–81; *Hahn Home,* 778 A.2d at 763. Here, there was evidence that Resources uses all of its surplus funds for the group homes and services that it provides and that its Articles of Incorporation and By–Laws prohibit the use of any surplus for private benefit. (H.T. at 25–26, 28–29, 39, R.R. at 67a–68a, 70a–71a, 81a; Resources Ex. A, R.R. at 98a, 116a.) The trial court therefore did not err in concluding that Resources showed that it operated free of private profit motive.

However, the trial court's ruling that Resources satisfied the second requirement of the *HUP* test, donation or gratuitous rendering of services, is not supported by any evidence in the record. The fact that Resources receives some payment for all of its services does not preclude a finding that it donates or renders services gratuitously. *St. Margaret Seneca Place,* 640 A.2d at 384; *Grace Center Community Living Corp.,* 796 A.2d at 1011–13; *Hahn Home,* 778 A.2d at 761–62; *Mt. Macrina Manor, Inc. v. Fayette County Board of Assessment Appeals,* 683 A.2d 935, 939–40 (Pa.Cmwlth.1996). This requirement is satisfied if payments that the entity receives for a substantial number of those that it serves are less than the cost of the services it provides. *St. Margaret Seneca Place,* 640 A.2d at 382, 384; *Hahn Home,* 778 A.2d at 762; *Mt. Macrina Manor, Inc.,* 683 A.2d at 939–40. "The requirement that an institution donate or render gratuitously a substantial portion of its services does not imply a requirement that the institution forgo available government payments which cover *part* of its costs, or that it provide wholly gratuitous services to some of its residents." *St. Margaret Seneca Place,* 640 A.2d at 384 (emphasis in original).

The requirement of donation or gratuitous rendering of services may also be satisfied if the entity demonstrates that it is meeting a need of a group that is a legitimate object of charity at cost or less. *Grace Center Community Living Corp.,* 796 A.2d at 1010, 1012–13 (although all residents of senior living home were charged rental fees, *HUP* test was satisfied because "[p]roviding senior living in a community atmosphere *at cost or less* satisfies the requirement that a charity donate or render gratuitously a substantial portion of its services") (emphasis added). In contrast, this requirement is not met where the government provides funding that fully subsidizes all of the entity's expenses. *National Church Residences of Mercer County v. Mercer County Board of Assessment Appeals,* 925 A.2d 220, 231 (Pa.Cmwlth.2007) (low-cost housing provider did not donate or gratuitously supply services where government subsidy covered all costs above tenants' reduced rent).

Here, the record is devoid of any evidence that Resources provides any of its services for payments lower than the full cost of those services or even that it provides services at cost. Resources introduced no evidence that it receives any charitable contributions or donations of property or services of any kind. *Compare Grace Center Community Living Corp.,* 796 A.2d at 1010, 1013 (operator of senior living home was staffed by unpaid volunteers). Nor did it make any showing that the Medicaid payments that it receives are less than the full costs of its services, including the acquisition and fixing up of its group homes, or introduce any evidence as to how those payments compare to the total cost of its services. *Compare St. Margaret Seneca Place,* 640 A.2d at 382, 384 (Medicaid payments covered only two-thirds of the cost of patients' care and the remainder of the cost for those patients was borne by nursing home); *Hahn Home,* 778 A.2d at 762 (amount of money spent on residents of home for el-

derly women far exceeded the contributions that it required from residents); *Mt. Macrina Manor, Inc.*, 683 A.2d at 936, 939 (cost of care for Medicaid patients exceeded Medicaid payments by 10% and cost of care for Medicare patients exceeded payments by 2%).

Resources' assertions in its brief that government funds only partially cover the costs of the care and services that it provides and that it pays for purchase and renovation of group homes from funds other than government payments are unsupported by anything in the record. No financial statements were introduced in evidence from which the trial court could make any findings concerning Resources' costs or the sufficiency of the payments it receives for its services. The only evidence concerning Resources finances was that it had a surplus of $820,000 over its expenses in one year, which does not show any providing of services at or below cost. While Resources' Director of Operations testified that Resources was not directly reimbursed by government payments for the cost of fixing up the homes (H.T. at 26, R.R. at 68a), there is no evidence as to the source of the funds that Resources used for those purposes or that those funds were not derived entirely from fully adequate payments for its services.

Resources argues that it satisfies the requirement of donation or gratuitous rendering of services because its operations are like those in *Community Options.* We do not agree. The majority opinion in *Community Options* only addressed whether the provider relieved the government of a burden, and did not hold that the provider showed donation or gratuitous rendering of services. 813 A.2d at 683 ("[o]nly the fourth prong of this test, *i.e.,* whether Appellant relieves the government of some of its burden, is at issue in this appeal"). Nothing in *Community Options* eliminated or modified the *HUP* test's requirement of donation or gratuitous rendering of services. Moreover, the record in *Community Options* showed that the provider supplemented the government funding with some fundraising, furniture donations and volunteer services. *Community Options, Inc. v. Board of Property Assessment,* 764 A.2d 645, 651 (Pa.Cmwlth.2000), *rev'd,* 571 Pa. 672, 813 A.2d 680 (2002). The record here contains no such evidence. *Community Options* therefore cannot cure the deficiency in Resources' proof.

It appears that Resources satisfies all of the statutory requirements imposed by the Charity Act.[6] As is discussed above and as

---

**6.** Resources advances a charitable purpose under the Charity Act. *See* 10 P.S. § 375(b)(4), (6) (including as a charitable purpose "treatment of disease or injury, including mental retardation and mental disorders" and any purpose "recognized as important and beneficial to the public and which advances social, moral or physical objectives"). It also clearly meets the statutory requirements that it benefit a substantial and indefinite class of persons who are legitimate subjects of charity, *see* 10 P.S. § 375(e)(2) (defining "[l]egitimate subjects of charity" as "[t]hose individuals who are unable to provide themselves with what the institution provides for them"), and that it relieve government of a burden. *See* 10 P.S. § 375(f)(1), (2), (4) (providing services "that the government would otherwise be obliged to fund or to provide directly or indirectly," "which are ... the responsibility of the government by law," or "which directly or indirectly reduces dependence on government programs" constitutes relieving government burden). Resources' use of its surplus, compensation structure and restrictions in its Articles of Incorporation and by-laws satisfy the Charity Act's criteria for absence of private profit motive. *See* 10 P.S. § 375(c)(1)-(4). Resources also appears to satisfy the statutory requirement of donation or gratuitous rendering of services because the Charity Act does not require any proof of below cost services or of any donation where the entity provides "goods or services to individuals eligible for government programs if ... (B) [t]he institu-

Resources admits, however, that fact cannot make Resources eligible for tax exemption as a "purely public charity" where it has not satisfied all of the constitutional requirements of the *HUP* test. *Mesivtah Eitz Chaim of Bobov, Inc.*, 44 A.3d at 9; *In re Appeal of Dunwoody Village*, 52 A.3d at 419; *Camp Hachshara Moshava of New York*, 47 A.3d at 1275, 1281.

It was Resources' burden to prove its entitlement to the charitable tax exemption that it sought and to show that it satisfies all of the requirements of the *HUP* test, including donation or gratuitous rendering of services. Because it failed to introduce evidence sufficient to meet that burden of proof, we reverse the trial court's order.

## *ORDER*

AND NOW, this 23rd day of December, 2014, the Order of February 21, 2014 of the Fayette County Court of Common Pleas in the above-captioned matter is REVERSED.

tion provides goods or services to individuals with mental retardation" and is subject to statutory or regulatory restriction on use of surplus funds. 10 P.S. § 375(d)(1)(vi)(B)(IV), (V), (VIII).