**CAMP HACHSHARA MOSHAVA OF NEW YORK, Appellant**

v.

**WAYNE COUNTY BOARD FOR the ASSESSMENT AND REVISION OF TAXES.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2011.
Decided May 23, 2012.
Reargument Denied July 9, 2012.

Robert T. Kelly, Jr. and Nicholas F. Kravitz, Scranton, for appellant.

Lee C. Krause, Honesdale, for appellee.

Before: COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Camp Hachshara Moshava of New York (Camp Moshava) appeals the May 5, 2011, decision of the Court of Common Pleas of Wayne County (trial court) affirming a decision of the Wayne County[1] Board for the Assessment and Revision of Taxes (Board) to deny Camp Moshava's application for exemption from real estate tax. We affirm.

The relevant facts of this appeal are summarized as follows. On August 31, 2009, Camp Moshava applied to the Board for exemption from real estate tax. Camp Moshava is a 501(c)(3) non-profit organization incorporated in New York that the Pennsylvania Department of Revenue has determined is eligible for a charitable exemption from the sales and use tax under section 204(10) of the Tax Reform Code of 1971.[2] (Reproduced Record (R.R.) at 199a.) Camp Moshava's certificate of incorporation states that its primary charitable mission is "to provide a camp for young people with a program designed to benefit them morally and physically and to do all things necessary or incidental thereto." (R.R. at 124.)

To that end, Camp Moshava conducts summer camps from mid-May to mid-September each year. (Finding of Fact No. 6.) The camp consists of seven synagogues, seventy bunk houses or dorms, a dining hall, family and living areas, two libraries, walking trails, and a camp-out area. (Finding of Fact No. 10.) All activities at the camp are tied to a religious and/or educational theme related to Orthodox Judaism and Zionism. (Finding of Fact No. 7.) Campers range in age from approximately 8 to 14 years old, grades 3–9, and each session consists of about 650 campers and 400–450 staff. (Findings of Fact Nos. 8, 9.) As part of its activities, Camp Moshava operates a special needs program at a

---

1. Wayne County is a sixth class county. 120 The Pennsylvania Manual 6–11 (2011).

2. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7204(10). Section 204(10) states, in pertinent part, that "[t]he tax imposed by section 202 shall not be imposed upon ... [t]he sale at retail to or use by ... any charitable organization...."

discounted rate for child campers and provides vocational training for special needs staff aged 18 to 35 years old. (Finding of Fact No. 13.) While tuition is charged for the sessions, the trial court found that the tuition was described as approximately $1,000 less than similarly situated camps. (Finding of Fact No. 11.) Scholarships based on financial need are given to about 100–150 campers each year, but no evidence regarding the requirements or calculations for qualification for the scholarships was presented. (Finding of Fact No. 12.) Camp Moshava donates surplus clothing to the Salvation Army and surplus food to a co-op, although no specified dollar amount for these donations was presented. (Finding of Fact No. 15.)

Camp Moshava provides extensive assistance to local volunteer ambulance and firefighting efforts. (Findings of Fact Nos. 16 and 17.) Specifically, Camp Mosh-

ava allows an ambulance to be stored on its premises and owns its own fire truck, which is available for use by firefighters in the community. (Finding of Fact No. 16.) Camp Moshava also provides its facilities to the local volunteer firefighting company and other firefighting companies for the purpose of staging training exercises. (Finding of Fact No. 17.)

Although the Board denied the property tax exemption to six of Camp Moshava's parcels, the Board found that two of the parcels, comprising five acres of land and two buildings used for prayer and religious teaching, were exempt.[3] (Finding of Fact, No. 4.) On appeal, the trial court determined that Camp Moshava does not relieve the government of some of its burden and hence is not an institution of purely public charity within the meaning of article 8, section 2(a)(v) of the Pennsylvania Constitution.[4] (Trial court op. at 8, 9.) The

3. Article 8, section 2(a)(i) of the Pennsylvania Constitution states, "[t]he General Assembly may by law exempt from taxation ... [a]ctual places of regularly stated religious worship." Pa. Const. art. VIII, § 2(a)(i). *See also* section 204(a)(1) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(1) ("The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: ... All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same...."); section 202(a)(1) of the former Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.202(a)(1), repealed by section 6(*l*)(ii) of the Act of October 27, 2010, P.L. 895, effective January 1, 2011 ("The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax to wit: ... All churches, meeting-houses or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same....").

4. Article 8, section 2(a)(v) of the Pennsylvania Constitution states, "[t]he General Assembly may by law exempt from taxation ... [i]nstitutions of purely public charity, but in the case of any real property tax exemption only that portion of real property of such institution which is actually and regularly used for the purposes of the institution." Pa. Const. art. VIII, § 2(a)(v). In addition, section 204(a)(3) of the General County Assessment Law provides, in pertinent part:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

\* \* \*

(3) All ... associations and institutions of ... benevolence or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose....

72 P.S. § 5020–204(a)(3).

trial court reasoned that Camp Moshava does not relieve the government of some of its burden because the local firefighting and ambulance service was entirely voluntary, without government involvement or obligation, and the camp's charitable donations are not sufficient to constitute a service to the public. (*Id.* at 8.) The trial court also rejected Camp Moshava's claim that its property was exempt because two comparable properties in Wayne County are exempt. (*Id.* at 8–9.) Therefore, the trial court affirmed the Board's determination that the other six parcels were subject to the real estate tax. (*Id.* at 9–10.)

■ On appeal to this Court,[5] Camp Moshava claims that the trial court erred in determining that it is not an institution of purely public charity because it does not relieve the government of some of its burden and that the trial court abused its discretion by inconsistently applying the charitable exemption in violation of article 8, section 1 of the Pennsylvania Constitution[6] and section 2 of the Institutions of Purely Public Charity Act (Act 55).[7]

> Likewise, section 202(a)(3) of the former Fourth to Eighth Class County Assessment Law provided, in pertinent part:
> (a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:
> \* \* \*
> (3) All ... associations and institutions of ... benevolence or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not be used in such a manner as to compete with commercial enterprise.
> 72 P.S. § 5453.202(a)(3), (9) (repealed).

5. Our scope of review in a real estate tax assessment appeal is limited to determining whether the trial court's findings are supported by substantial evidence or whether the trial court abused its discretion or committed an error of law. *Church of the Overcomer v. Delaware County Board of Assessment Appeals*, 18 A.3d 386, 388–89 n. 1 (Pa.Cmwlth. 2011). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The trial court is the fact finder in tax assessment cases and resolves all matters of credibility and evidentiary weight. *Grace Center Community Living Corp. v. County of Indiana*, 796 A.2d 1008, 1010 (Pa.Cmwlth.2002). Thus, a trial court's findings are binding on appeal when supported by substantial evidence. *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review*, 536 Pa. 478, 483–84, 640 A.2d 380, 383 (1994).

6. Article 8, section 1 states, in pertinent part, that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax...." Pa. Const. art. VIII, § 1.

7. Act of November 26, 1997, P.L. 508, *as amended*, 10 P.S. § 372. Section 2 of Act 55 provides, in pertinent part:

> (a) **Findings.**—The General Assembly finds and declares as follows:
> (1) It is in the best interest of this Commonwealth and its citizens that the recognition of tax-exempt status be accomplished in an orderly, uniform and economical manner.
> \* \* \*
> (4) Lack of specific legislative standards defining the term "institutions of purely public charity" has led to increasing confusion and confrontation among traditionally tax-exempt institutions and political subdivisions to the detriment of the public.
> (5) There is increasing concern that the eligibility standards for charitable tax exemptions are being applied inconsistently, which may violate the uniformity provision of the Constitution of Pennsylvania.
> \* \* \*
> (b) It is the intent of the General Assembly to eliminate inconsistent application of eligibility standards for charitable tax exemptions, reduce confusion and confronta-

■ An institution seeking a real estate tax exemption bears a heavy burden of establishing its entitlement to such an exemption. *Church of the Overcomer*, 18 A.3d at 391. A property owner's entitlement to a tax exemption is a mixed question of law and fact, and this Court will not disturb the trial court's decision absent an abuse of discretion or lack of supporting evidence. *Id.* at 388–89 n. 1.

■ Because the Pennsylvania Constitution does not provide a definition for "institution of purely public charity," our Supreme Court in *Hospital Utilization Project v. Commonwealth of Pennsylvania*, 507 Pa. 1, 487 A.2d 1306 (1985), developed what is generally known as the *HUP* test to be used to determine whether an entity is an institution of purely public charity. Under the *HUP* test, an entity qualifies as an institution of purely public charity if it does each of the following:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) *Relieves the government of some of its burden;* and

(e) Operates entirely free from private profit motive.

*Hospital Utilization Project*, 507 Pa. 1, 22, 487 A.2d 1306, 1317 (emphasis added).

As the Pennsylvania Supreme Court has explained:

In the end, to receive an exemption without violating the Constitution, the party must meet the definition of "purely public charity" as measured by the

test in *HUP*. If it does so, it may qualify for exemption if it meets the statute's requirements. Act 55, however, cannot excuse the constitutional minimum—if you do not qualify under the *HUP* test, you never get to the statute. We have repeatedly held " '[a]n entity seeking a statutory exemption for [sic] taxation must first establish that it is a 'purely public charity' under Article VIII, Section 2 of the Pennsylvania Constitution before the question of whether that entity meets the qualifications of a statutory exemption can be reached.' " *Alliance Home* [ *of Carlisle, Pa. v. Board of Assessment Appeals*, 591 Pa. 436, 463, 919 A.2d 206, 222 (2007) ] (quoting *Community Options*[*, Inc. v. Board of Property Assessment*, 571 Pa. 672, 679–80, 813 A.2d 680, 685 (2002) ] ); *see also HUP* at 1312 ("Because we reach the conclusion ... that *HUP* is not a 'purely public charity' within the meaning of the Constitution, we do not reach whether *HUP* qualifies [for a tax exemption] under the Pennsylvania Code definition."). ...

*Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals* (*Mesivtah Eitz Chaim II* ), —— Pa. ——, ——, 44 A.3d 3, 9 (2012) By satisfying the *HUP* test, an entity shows that it meets the minimum constitutional requirements to be eligible for a tax exemption; it must then demonstrate that it satisfies the statutory requirements of Act 55 to receive the exemption. *Church of the Overcomer*, 18 A.3d at 392. "[T]he *HUP* test and [Act 55] are not mutually exclusive and operate concurrently, with [Act 55] codifying the purely public charity test of HUP and

tion among traditionally tax-exempt institutions and political subdivisions and ensure that charitable and public funds are not unnecessarily diverted from the public good to litigate eligibility for tax-exempt status by providing standards to be applied uniformly in all proceedings throughout this Com-

monwealth for determining eligibility for exemption from State and local taxation which are consistent with traditional legislative and judicial applications of the constitutional term "institutions of purely public charity."

10 P.S. § 372.

expounding upon the requirements thereof." *Id.* at n. 4 (citations omitted). Thus, in addition to satisfying the *HUP* test, an entity seeking a real estate tax exemption must also satisfy the statutory qualifications found in section 5 of Act 55. *Id.* at 394.

Corresponding to part (d) of the *HUP* test (pertaining to relieving the government of a burden), section 5(f) of Act 55 provides as follows:

**(f) Government service.**—The institution must relieve the government of some of its burden. This criterion is satisfied if the institution meets any one of the following:

(1) Provides a service to the public that the government would otherwise be obliged to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.

(2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.

(3) Receives on a regular basis payments for services rendered under a government program if the payments are less than the full costs incurred by the institution, as determined by generally accepted accounting principles.

(4) Provides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, moral, educational or physical objectives.

(5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section 5.

(6) Has a voluntary agreement under section [377 which allows political subdivisions to execute voluntary agreements with institutions owning real property within their borders].

10 P.S. § 375(f).

Because the trial court concluded that Camp Moshava did not relieve the government of some of its burden and, therefore, could not prevail, the trial court did not analyze any of the other requirements of the *HUP* test or Act 55, correctly noting that if any one of the elements of the *HUP* test cannot be established, the entity does not qualify as an institution of purely public charity. The trial court's analysis of this issue was as follows:

[Camp] Moshava directs this Court to its many acts of charity in this community, including its assistance to the White Mills Fire and Ambulance Department. *However, both of those activities are volunteer organizations without governmental involvement or obligation.* Furthermore, although [Camp] Moshava partakes of other acts of charity through its donations, it is not sufficient to constitute a service to the public that would relieve the governmental burden.

(Trial court op. at 8.) (Emphasis added.)

Camp Moshava claims that the trial court erred in determining that it was not a purely public charity where it operates two special needs programs at the camp and provides assistance to the volunteer firefighting and ambulance services. We disagree.

In *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne,* 149 Pa.Cmwlth. 349, 613 A.2d 125 (1992), Camp Moshava appealed the Board's 1990 determination that it was not exempt from taxation as an institution of purely public charity. In that earlier case, Camp Moshava argued that it relieved the government of some of its burden because

the camp provided social, educational, and recreational activities during the summer months to its participants, and because it provided food and medical care during that period that the government would otherwise have to provide.

In rejecting Camp Moshava's assertion that it was entitled to an exemption, this Court explained:

> The evidence of record reveals that in addition to religious education, the Camps sponsor drug awareness programs, and provide social and recreational activities which typically involve a religious theme. The record also reveals that students who choose to attend the Camps are charged a fee of approximately $2,800.00 for an eight week session. However, the Camps failed to produce any evidence to show that the government is obligated to provide social, recreational, or educational activities for children during summer months.

> Moreover, the Camps failed to produce any documentation, data, or other information to support their assertion that they supply food and medical services that the government would otherwise have to provide. Instead, financial documentation produced by the Camps at trial and testimony taken at trial reveal that each summer the government supplies food, milk, and dry goods to the Camps....

> Furthermore, the Camps argue that they indirectly relieve the government of some of its future burdens by making the camp participants morally responsible citizens. However, neither an indirect benefit, nor a laudable motive, is a sufficient basis for the granting of an exemption from taxation.

> The proof offered by the Camps fails to demonstrate that the Camps relieve the government of some of its burden as required by *HUP*. ...

*Associated YM–YWHA,* 613 A.2d at 128–29 (citations omitted).

Likewise, in *Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals* (*Mesivtah Eitz Chaim I*), 985 A.2d 310 (Pa.Cmwlth., No. 2343 C.D.2008, filed December 29, 2009),[8] another section 501(c)(3) non-profit religious organization that operated an Orthodox Jewish summer camp sought an exemption based upon its charitable status and the nature of its camp. In that case, the camp also was primarily designed as an educational camp with a curriculum that primarily consisted of classes and lectures on the Jewish Orthodox religion with some time set aside for recreational activities. The camp was operated through donated funds, tuition, and rent received from other properties. The cost per camper exceeded the maximum tuition rate, the camp's expenses exceeded the amount received in tuition, and 79% of the campers received some form of financial assistance. The camp maintained a food program for its campers and the camp's dining and recreational facilities were open to the general public.

After a trial court affirmed a board's denial of an exemption from real estate tax, the camp appealed arguing, *inter alia,* that the trial court erred in determining that it did not relieve the government of

---

8. The memorandum opinion of this Court in *Mesivtah Eitz Chaim I* was affirmed by the Supreme Court in *Mesivtah Eitz Chaim II. See id.,* —— Pa. at ——, 44 A.3d at 9 ("The Commonwealth Court held appellant did not satisfy the *HUP* test, and our grant of allocator was limited to its continued viability in light of Act 55. As such, we will not review the Commonwealth Court's application thereof, nor the relevance or constitutionality of Act 55. The order of the Commonwealth Court is affirmed."). An unreported panel decision of this Court may be cited for its persuasive value, but not as binding precedent. Commonwealth Court Internal Operating Procedures § 414, 210 Pa.Code § 67.55.

some of its burden. Citing *Unionville–Chadds Ford School District v. Chester County Board of Assessment and Appeals*, 552 Pa. 212, 714 A.2d 397 (1998), and *In re Sewickley Valley YMCA Decision of Board of Property Assessment*, 774 A.2d 1 (Pa.Cmwlth.2001),[9] the camp argued that the recreational activities and food facilities that it provided relieved the government of its burden.

In considering the camp's assertions, we noted that although the camp's recreational facilities were used by the campers and children of staff and were available to the public on request, there was no evidence that the public ever requested use of the facilities, and the camp's soccer field, which was outside the gates, was used only on occasion by the public. *Mesivtah Eitz Chaim I*, slip op. at 9–10. Further, although the camp's food facility was open to the public, there was no evidence that it was ever used by the public. *Id.* at 10. As a result, we concluded: the camp did not establish that its recreational and food facilities alleviated any burden in the local community as in *In re Sewickley Valley YMCA;* there was no evidence that the

camp's facilities provided opportunities beyond the reach of the local community, as in *Unionville–Chadds Ford School District;* the *de minimis* public use of the soccer field outside the gates of the camp was insufficient to show that it relieved the government of a burden; and there was no evidence that the campers would have used the recreational facilities if the camp did not have such facilities given that its primary purpose was the intensive study of Judaism and that recreation was purely ancillary to its primary purpose. *Id.* at 10, 11. Accordingly, we agreed that the camp did not relieve the government of some burden and affirmed the trial court's order. *Id.* at 12.

■ In the case *sub judice*, Camp Moshava first asserts that its two special needs programs relieve the government of some burden and cites *Mars Area School District v. United Presbyterian Women's Association of North America*, 554 Pa. 324, 721 A.2d 360 (1998), in support. In *Mars Area School District*, the United Presbyterian Women's Association of North America (UPWA) operated the Mars Home for Youth (MHY), a residen-

9.  As this Court explained:

> [*U*]*nionville–Chadds Ford* concerned Longwood gardens, a world-renowned public garden, which includes an arboretum, conservatory and greenhouse complex, architectural displays, water gardens, fountains, an open air theater, meadow and forest land, wildlife habitats, walking trails, picnic areas and a variety of educational and research facilities. 552 Pa. at 215, 714 A.2d at 398. Longwood Gardens hosts hundreds of performing arts events a year, conducts workshops and lectures and has donated $2 million dollars to the surrounding community for local road improvement and additional money to schools and the local fire and rescue squads. In *Unionville–Chadds Ford*, our Supreme Court found that although the government did not have a constitutional or statutory obligation to provide public gardens, this is not determinative as to whether an entity relieves the govern-

> ment of some of its burden. 552 Pa. at 220, 714 A.2d at 401. Our Supreme Court concluded that:
>
>> the government has long provided support for public parks and recreation areas as well as for cultural institutions, including museums, libraries, etc. Longwood's public park and cultural facilities fall clearly within the scope of burdens that are routinely shouldered by government. Hence, this element of the *HUP* test was properly found to be met.
>
> 552 Pa. at 221–22, 714 A.2d at 401. In *In re Sewickley*, this court held that a YMCA relieved some of the government's burden because it gratuitously allowed school districts to use its swimming pool and athletic fields, therefore, relieving the school districts of their burden to provide the necessary facilities for their extra-curricular activities.
>
> *Mesivtah Eitz Chaim I*, slip op. at 8–9.

tial treatment facility for children who had been adjudicated delinquent or dependent. Although MHY received per diem payments from the counties that referred each child and money from the federal school lunch program, MHY provided approximately 24% of its yearly operating expenses through donations and endowment income and operated at a deficit for a number of years. UPWA donated the premises to MHY rent-free, thereby shouldering the operating deficits and depreciation expenses, and expended millions in capital improvements to the MHY facilities.

In determining that UPWA satisfied the fourth prong of the *HUP* test by relieving government of some burden, the Supreme Court explained:

> Inasmuch as MHY bears the costs for a substantial portion of its facilities and services, it relieves the government of a burden that would otherwise befall it.

> That the full burden of providing facilities and services for the care of children who have been adjudicated dependent or delinquent would rest on government, were it not for institutions such as MHY, is undisputed. The Commonwealth has a statutory duty to provide for the care of such children. Juvenile Act, 42 Pa.C.S. § 6301 *et seq.;* [Sections 704.1 and 704.2 of the] Public Welfare Code, [Act of June 13, 1967, P.L. 31, added by Act of July 15, 1976, P.L. 846, *as amended,*] 62 P.S. §§ 704.1, 704.2.

> The record amply supports, therefore, the trial court's finding that UPWA's exemption from tax on the property of MHY is in compliance with element four of the *HUP* test. . . .

*Mars Area School District,* 554 Pa. at 329, 721 A.2d at 362–63.[10]

In contrast, in this case the trial court found that, as part of its activities, Camp Moshava operates a special needs program at a discounted rate for ten child campers and provides vocational training for special needs staff who work part of the day while at camp. (Finding of Fact No. 13; R.R. at 54a–56a.) However, Camp Moshava has failed to demonstrate that the government is obligated to provide social, recreational, or educational activities for special needs children at a summer camp, or to provide training to special needs adults in such an environment, in contrast to the necessary services provided by UPWA in *Mars Area School District.* Camp Moshava generally cites the Mental Health and Mental Retardation Act of 1966 (MH/MR Act)[11] as the source of the government's burden with respect to children and adults with special needs. However, Camp Moshava does not cite any evidence that the services it provides to special needs children and adults relieves any specific burden imposed by the MH/MR Act. *Cf. Community Options, Inc.,* 571 Pa. at 679–80, 813 A.2d at 685 (holding that a nonprofit corporation that acquires and renovates houses in residential neighborhoods with private funds and houses individuals diagnosed with mental retardation and severe physical disabilities with 24–hour supervision with government funds, relieved the government of a burden because the government was required to provide services for the individuals diagnosed with mental retardation under the MH/MR Act and the corporation also provided services that the government was not capable of providing). In addition, Camp Moshava failed to show that its re-

---

10. *See also St. Margaret Seneca Place,* 536 Pa. at 487, 640 A.2d at 384–85 (holding that nursing home that provided care for Medicaid recipients who would otherwise require care in a government-provided facility and nursing home bore one-third of the cost of such resi-

dents' care relieved the government of some of its burden).

11. Act of October 20, 1966 Special Sess., P.L. 96, *as amended,* 50 P.S. §§ 4101–4704.

creational and food facilities alleviated any burden in the local community like the facilities provided by the YMCA in *In re Sewickley Valley YMCA,* or that its facilities provided opportunities beyond the reach of the local community like the unique facilities provided by Longwood gardens in *Unionville–Chadds Ford School District.*

■ Camp Moshava also claims that it relieves the government of some burden through the assistance that it provides to the volunteer firefighting and ambulance services. The law is settled that volunteer fire companies are to be considered "local agencies" of the government. *Wilson v. Dravosburg Volunteer Fire Department No. 1,* 101 Pa.Cmwlth. 284, 516 A.2d 100 (1986) (holding that volunteer fire companies are local agencies of the government and, therefore, entitled to the same degree of governmental immunity as any other governmental unit). The rationale for this is that the "functions and accomplishments of volunteer fire departments affix to their continued existence a public, *governmental* character." *Id.,* 516 A.2d at 101 (emphasis in original). Put simply, were there no volunteer fire company to perform firefighting service within a given community, the government would have the responsibility of providing and funding such service. Thus, we recognize that volunteer fire departments can and do relieve the government of some of its burden, and that the trial court erred in rejecting this assertion.

Nevertheless, we agree with the trial court that Camp Moshava failed to establish that it is an institution of purely public charity.[12] As noted above, our Constitution permits real property tax exemption only for that portion of real property "which is actually and regularly used *for the purposes of the institution.*" Pa. Const. art. VIII, § 2(a)(v) (emphasis added). Here, Camp Moshava's certificate of incorporation states that its mission is "to provide a camp for young people with a program designed to benefit them morally and physically and to do all things necessary or incidental thereto." (R.R. at 124.) Because Camp Moshava's stated purpose, to provide a children's camp, is entirely unrelated to ambulance and firefighting services, Camp Moshava's assistance to the local firefighting and ambulance efforts, while laudable, is insufficient to establish Camp Moshava as an institution of purely public charity under our Constitution. *See Associated YM–YWHA,* 613 A.2d at 129 ("[N]either an indirect benefit, nor a laudable motive, is a sufficient basis for the granting of an exemption from taxation.").

As a corollary to the foregoing claim, Camp Moshava also argues that it is entitled to a rebuttable presumption that it is an institution of purely public charity because the Department of Revenue determined that it is entitled to a charitable exemption from the sales and use tax under section 204(10) of the Tax Reform Code of 1971, 72 P.S. § 7204(10). Section 6(a) of Act 55 clearly states that "[a]n institution of purely public charity possessing a valid exemption from the tax imposed by [section 202 of the Tax Reform Code of 1971, 72 P.S. § 7202], shall be entitled to assert a rebuttable presumption regarding that institution's compliance with the criteria set forth in section 5...." 10 P.S. § 376(a). Section 6(b) of Act 55 provides that "[i]f an institution of purely public charity asserts a presumption under subsection (a), a political subdivision challenging that institution before a government agency or court shall bear the bur-

---

12. It is well settled that we may affirm the trial court's order for any valid reason appearing in the record. *Ario v. Ingram Micro,* *Inc.,* 600 Pa. 305, 315–16, 965 A.2d 1194, 1200 (2009).

den, by a preponderance of the evidence, of proving that the institution of purely public charity does not comply with the requirements of section 5." 10 P.S. § 376(b).

However, as outlined above, Camp Moshava has failed to establish that it is an institution of purely public charity within the meaning of article 8, section 2(v) of the Pennsylvania Constitution under *HUP.* Thus, Camp Moshava cannot avail itself of the presumption under Act 55 because it cannot be the proper object of the Act 55 exemption in the first instance. *Mesivtah Eitz Chaim II,* ——— Pa. at ———, 44 A.3d at 7 ("[A]ct 55, however, cannot excuse the constitutional minimum—if you do not qualify under the *HUP* test, you never get to the statute....").[13]

■ Camp Moshava's final argument is that the trial court and the Board have inconsistently applied the eligibility standards for charitable tax exemption contrary to the uniformity clause of the Pennsylvania Constitution and the express purposes stated in section 2 of Act 55. In support, Camp Moshava contends that the Board has granted tax exempt status to two other charitable organizations that are purportedly similar to Camp Moshava in many material respects and that the Board has erroneously applied the law in

granting the exemptions to the other organizations.

However, as the Pennsylvania Supreme Court has explained:

A taxpayer complaining that administration of a tax violates its right to be taxed uniformly with others in its class must demonstrate "deliberate, purposeful discrimination in the application of the tax ... before constitutional safeguards are violated." Appellant has the burden of proof of showing the discriminatory pattern which might entitle him to relief: "the validity of * * * actions (of taxing authorities) is presumed; when assailed, the burden of proof is upon the complaining party." ["T]he challengers of the constitutionality of state or local taxation bear a heavy burden...." This statement, made in a case concerning the validity of a statute, is no less true when the taxpayer challenges the administration of a tax law

*Fisher Controls Company, Inc. v. Commonwealth,* 476 Pa. 119, 126, 381 A.2d 1253, 1256–57 (1977) (citations omitted). Thus, "[m]ere errors in assessment will not support a claim of violation of uniformity of taxation." *Commonwealth v. Molycorp, Inc.,* 481 Pa. 208, 213, 392 A.2d 321, 323 (1978) (citations omitted).[14] In the absence of any allegation regarding a

---

**13.** It appears that we are again confronted with the anomalous situation in which the Pennsylvania Department of Revenue has deemed an entity to be the proper object of a charitable exemption from the sales and use tax under section 204(10) of the Tax Reform Code of 1971, 72 P.S. § 7204(10), and yet that same entity is not deemed to be the proper object of another tax exemption as an institution of purely public charity under *HUP.* It would seem that if the Commonwealth has determined that an entity constitutionally and statutorily qualifies for a sales and use tax exemption, the uniformity provisions of the Pennsylvania Constitution would compel the application of that status to other like circumstances. Indeed, section 6(a) of Act 55 goes a long way in promoting such uniform applica-

tion with respect to a statutory exemption for an institution of purely public charity. Nevertheless, under *Mesivtah Eitz Chaim II,* we are precluded from considering the application of section 6(a) of Act 55 because Camp Moshava does not initially meet the requirements of *HUP* by failing to relieve the government of some burden.

**14.** *See also Wyoming Valley Montessori Association, Inc. v. Board of Assessment Appeals of Luzerne County,* 110 Pa.Cmwlth. 458, 532 A.2d 931, 935 (1987) ("[A] decision regarding the charitable nature of an institution is a mixed question of fact and law which depends on the unique factual matrix of each case. We have determined here that the Board, as a

widespread pattern of discriminatory application, Camp Moshava's bald assertion that the Board violated the uniformity clause of the Pennsylvania Constitution and the express purposes stated in section 2 of Act 55 due to its erroneous application of the law is insufficient to support its claim.

Accordingly, the trial court's order is affirmed.

matter of law, reached the correct decision regarding Appellant['s tax-exempt status] based on the facts presented. Thus, even if Appellant could prove that the Board incorrectly granted a tax exemption in *another* case, such evidence would not warrant the

### ORDER

AND NOW, this 23rd day of May, 2012, the May 5, 2011 order of the Court of Common Pleas of Wayne County is hereby affirmed.

grant of tax-exempt status to Appellant in the instant matter ....") (citations omitted and emphasis in original).