Good Shepherd Child Care Center,     :
                Appellant     :
            :
      v.                :
            :
Pike County Board of Assessment     :
Appeals, Pike County, Dingman     :
Township, and Delaware Valley     :    No. 882 C.D. 2017
School District             :    Submitted: April 10, 2018


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: April 30, 2018


      Good Shepherd Child Care Center (Good Shepherd) appeals from the Pike County Common Pleas Court's (trial court) June 6, 2017 order denying its appeal from the Pike County Board of Assessment Appeals' (Board) decision denying Good Shepherd tax exempt status for the 2017 tax year. The issue before this Court is whether the trial court erred as a matter of law and/or abused its discretion by concluding that Good Shepherd was not a purely public charity eligible for property tax exemption.[1] After review, we affirm.

---

[1] Good Shepherd's Statement of Questions Involved lists three issues: (1) whether the trial court erred by basing factual findings on the Board's brief, rather than record evidence; (2) whether the trial court erred by finding that Good Shepherd did not donate or gratuitously render a substantial portion of its services; and (3) whether the trial court abused its discretion by concluding that Good Shepherd was not a purely public charity eligible for property tax exemption. *See* Good Shepherd Br. at 1. Because Good Shepherd incorporated these issues in a single argument (*see* Good Shepherd Br. at 3-6; *see also* Concise Statement of Errors Complained of on Appeal), and since they are subsumed in the analysis of whether the trial court abused its discretion by

Good Shepherd is an Internal Revenue Service (IRS)-classified 501(c)(3)[2] corporation that operates a child care and education center on its property located at 102 State Route 2001 in Milford, Dingman Township, Delaware Valley School District, Pike County, Pennsylvania (Property). Good Shepherd provides full-day daycare, part-time pre-school[3] HeadStart[4] programming, and before and after school and summer programming for school-aged students.[5] *See* Reproduced Record (R.R.) at 82.[6] Good Shepherd is a state-funded Keystone STARS (STARS) facility, whose infant to school-age student lesson plans are based on STARS-approved curriculum.[7] *See* R.R. at 26, 30, 42-43, 65-66, 82-84, 101. Its operations are

concluding that Good Shepherd was not a purely public charity, we have likewise combined the issues herein.

[2] Section 501(c)(3) of the Internal Revenue Code of 1986 exempts from federal income taxation organizations, including non-profit corporations, that are "organized and operated exclusively for religious, charitable . . . or educational purposes[.]" 26 U.S.C. § 501(c)(3). The IRS granted Good Shepherd 501(c)(3) status effective October 15, 2013. *See* Reproduced Record (R.R.) at 185; *see also* R.R. at 194, 225.

[3] Good Shepherd's pre-school consists of children not old enough to attend school: pre-school (3- to 4-year-olds who attend the entire day), expansion pre-school (3- to 5-year-olds who attend from 9:00 a.m. to 1:00 p.m. during the school year), and pre-K (4- and 5-year-olds who attend the entire day). *See* R.R. at 99-101.

[4] "Head Start is primarily a federally-funded program that provides education, health and social services to families with children aged 3, 4 and 5." http://www.dhs.pa.gov/citizens/childcareearlylearning/headstart/ (last visited March 20, 2018).

[5] Accredited educational programming is provided beyond regular daycare services. *See* R.R. at 82. Good Shepherd uses established curriculums for infants to school-aged children linked to Pennsylvania's early learning standards. *See* R.R. at 94, 96, 99-100.

[6] Good Shepherd's record references are not represented as a number followed by a small "a" as specified by Pennsylvania Rule of Appellate Procedure 2173.

[7] "Keystone STARS (Standards, Training/Professional Development, Assistance, Resources) provides families with a tool to gauge the quality of early learning programs. The STARS program supports early learning programs in the commitment to continuous quality improvement. Programs that participate in Keystone STARS care about providing quality early learning to your child." Pa. Dep't of Human Servs., Keystone STARS Info. for Parents, http://dhs.pa.gov/citizens/childcareearlylearning/keystonestarsinformationforparents/ (last visited March 27, 2018). STARS is brokered in Good Shepherd's region by Community Services for Children, a non-profit organization. *See* R.R. at 82-84.

governed by Department of Human Services regulations and STARS standards. *See* R.R. at 91.

On August 31, 2016, Good Shepherd applied to the Board for an exemption from local real estate taxes for the 2017 tax year (Application). In the Application, Good Shepherd designated that it is an "institution of learning[] founded, endowed and maintained by [a] public or private charity," R.R. at 167, and that the Property is "owned by [an] institution[] of purely public charity, used and occupied . . . by [such] owner . . . and necessary for the occupancy and enjoyment of such institution[] so using it." R.R. at 168. Dingman Township and Delaware Valley School District opposed the Application.

On October 11, 2016, the Board conducted a hearing and, by October 28, 2016 decision, denied the Application. *See* R.R. at 182. On November 28, 2016, Good Shepherd appealed from the Board's decision to the trial court, which held a *de novo* hearing on March 24, 2017. *See* R.R. at 10-155. On June 6, 2017, the trial court denied Good Shepherd's appeal because Good Shepherd failed to prove that it is a purely public charity under the Institutions of Purely Public Charity Act (Act)[8] or the five-point test the Pennsylvania Supreme Court articulated in *Hospital Utilization Project* [*(HUP)*] *v. Commonwealth*, 487 A.2d 1306 (Pa. 1985) (*HUP* test).[9] Good Shepherd appealed to this Court.[10]

---

[8] Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371-385.

[9] The legislature codified this test and added several additional objective standards in the Act. *See Betsy King LPGA Classic, Inc. v. Twp. of Richmond*, 739 A.2d 612 (Pa. Cmwlth. 1999), *as amended on clarification* (Nov. 12, 1999).

[10] "Our scope of review in a real estate tax assessment appeal is limited to determining whether the trial court's findings are supported by substantial evidence or whether the trial court abused its discretion or committed an error of law." *Camp Hachshara Moshava of New York v. Wayne Cty. Bd. for Assessment & Revision of Taxes*, 47 A.3d 1271, 1274 n.5 (Pa. Cmwlth. 2012).

Good Shepherd argues that the trial court abused its discretion by failing to find that Good Shepherd was a purely public charity eligible for property tax exemption. We disagree.

> The Pennsylvania Constitution authorizes the General Assembly to exempt from taxation '[i]nstitutions of purely public charity.' Pa. Const. art. VIII, § 2(a)(v). However, our Constitution does not define that term. For this reason, the Pennsylvania Supreme Court established . . . the '*HUP* test.'

*Pocono Cmty. Theater v. Monroe Cty. Bd. of Assessment Appeals*, 142 A.3d 110, 115 (Pa. Cmwlth. 2016). Under the *HUP* test,

> an entity qualifies as a purely public charity if it possesses the following characteristics[:]
>
> (a) [a]dvances a charitable purpose;
>
> (b) **[d]onates or renders gratuitously a substantial portion of its services**;
>
> (c) [b]enefits a substantial and indefinite class of persons who are legitimate subjects of charity;
>
> (d) [r]elieves the government of some of its burden; and
>
> (e) [o]perates entirely free from private profit motive.

*HUP*, 487 A.2d at 1317 (emphasis added).

> '**By satisfying the [*HUP*] test, an entity shows that it [merely] meets the minimum constitutional requirements to be eligible for a tax exemption.**' *Camp Hachshara Moshava* [*of New York v. Wayne Cty. Bd. for Assessment & Revision of Taxes*], 47 A.3d [1271,] 1275 [(Pa. Cmwlth. 2012)]. **The entity 'must then also show that it meets the statutory requirements' of Section 5 of the [Act] to qualify for a tax exemption**. *Fayette Res*[.]*, Inc. v. Fayette C*[*ty.*] *B*[*d.*] *of Assessment,* 107 A.3d 839, 845 (Pa. Cmwlth. 2014) . . . . The burden is on the entity seeking the tax exemption.

4

*Pocono Cmty. Theater*, 142 A.3d at 115 (emphasis added). Section 5(a) of the Act provides that an institution that satisfies the criteria specified in subsections (b) (relating to charitable purpose), (c) (relating to private profit motive), (d) (relating to community service), (e) (relating to charity to persons), and (f) (relating to government service) "shall be considered to be founded, endowed and maintained by public or private charity." 10 P.S. § 375(a). "[T]he mere fact that an organization is a non-profit corporation does not mandate that it should be exempt from taxation. Also irrelevant is the argument that [a property owner is] . . . a nonprofit corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code . . . ."[11] *HUP*, 487 A.2d at 1316 (citations omitted).

Consequently, in order for Good Shepherd to be eligible for tax exempt status, it must *preliminarily prove* that it meets the *HUP* test's minimum constitutional requirements *before* Section 5 of the Act's provisions are applied. *Pocono Cmty. Theater*; *see also In re Appeal of Dunwoody Vill.*, 52 A.3d 408 (Pa. Cmwlth. 2012). Here, the trial court declared that Good Shepherd failed to prove the second prong of the *HUP* test, *i.e.*, that Good Shepherd donates or gratuitously renders a substantial portion of its services. Good Shepherd's appeal and, thus, this

---

[11] In *Pittsburgh Institute of Aeronautics Tax Exemption Case,* [258 A.2d 850 (Pa. 1969)], th[e Pennsylvania Supreme] Court stated:

> [A federal 501(c)(3) designation] is immaterial and not controlling since we are not bound by [f]ederal determinations as to the charitable character of a school. More important, however, standards applied under the [f]ederal statute are totally different from those under the Pennsylvania statute—the [f]ederal statute applies to any educational institution, charitable or otherwise. [*See* Section 501(c)(3) of the Internal Revenue Code].

> *Id.* . . . at 854.

*HUP*, 487 A.2d at 1316-17.

5

Court's review are limited to whether Good Shepherd met its burden on that requirement.

Regarding the *HUP* test's second requirement, the Pennsylvania Supreme Court ruled:

> Whether or not the portion donated or rendered gratuitous is 'substantial' is a determination to be made **based on the totality of circumstances** surrounding the organization. The word 'substantial' does not imply a magical percentage. It must appear from the facts **that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee**.

*HUP*, 487 A.2d at 1316 n.9 (emphasis added). This Court has clarified:

> The fact that [the property owner] receives some payment for all of its services does not preclude a finding that it donates or renders services gratuitously. **This requirement is satisfied if payments that the entity receives for a substantial number of those that it serves are less than the cost of the services it provides**. 'The requirement that an institution donate or render gratuitously a substantial portion of its services **does not imply a requirement that the institution forgo available government payments which cover *part* of its costs, or that it provide wholly gratuitous services to some of its residents**.' *St. Margaret Seneca Place* [*v. Bd. of Prop. Assessment, Appeals & Review*]*,* 640 A.2d [380,] 384 [(Pa. 1994)] ([italic] emphasis in original).
>
> The requirement of donation or gratuitous rendering of services may also be **satisfied if the entity demonstrates that it is meeting a need of a group that is a legitimate object of charity at cost or less**. *Grace C*[*tr.*] *C*[*mty.*] *Living Corp.* [*v. Cty. of Indiana*]*,* 796 A.2d [1008, 1013 (Pa. Cmwlth. 2002)] (although all residents of senior living home were charged rental fees, [the] *HUP* test was satisfied because '[p]roviding senior living in a community atmosphere *at cost or less* satisfies the requirement that a charity donate or render gratuitously a substantial portion of its services') ([italic] emphasis added). In contrast, **this requirement is not met where the government provides funding that fully subsidizes all of the entity's expenses**.

6

> *Nat*[*'l*] *Church Residences of Mercer C*[*ty.*] *v. Mercer C*[*ty.*] *B*[*d.*] *of Assessment Appeals,* 925 A.2d 220, 231 (Pa. Cmwlth. 2007) (low-cost housing provider did not donate or gratuitously supply services where government subsidy covered all costs above tenants' reduced rent).

*Fayette Res., Inc*, 107 A.3d at 847 (citations omitted; bold emphasis added). This Court has held that if the facility's funds are derived from sufficient governmental subsidies and private payments such that the property owner is without financial risk, the facility does not donate or gratuitously render a substantial portion of its services under the *HUP* test. *See Nat'l Church Residences of Mercer Cty*.

At the trial court hearing in the instant matter, Good Shepherd offered its amended 2014 IRS Form 990 (*see* R.R. at 23-24, 194-221), 2015 IRS Form 990 (*see* R.R. at 24-25, 225-249), two state-funded STARS grants (*see* R.R. at 26, 30, 42-43, 54, 65, 250-285) and a United Way grant (*see* R.R. at 26, 42-43, 286-303), Good Shepherd's operational financial records for the 2015-2016 fiscal year (*see* R.R. at 26),[12] and a spreadsheet reflecting the sources and levels of Good Shepherd's 2016 daily student-paid tuition (2016 Tuition Spreadsheet) (*see* R.R. at 30-31, 108, 313-317).

Good Shepherd's Treasurer and Board Member Jennifer Hamill (Hamill) testified that the Property is used only for daycare and educational purposes.[13] *See* R.R. at 22, 70. Hamill recalled based on Good Shepherd's 2014 IRS Form 990, Good Shepherd's $507,144.00 2014 tax year revenue (*see* R.R. at 44, 58, 202) from tuition ($447,901.00; *see* R.R. at 41, 46-47, 58-59, 202), fundraising ($15,552.00; *see* R.R. at 40-41, 67-68, 202), other gifts ($5,000; *see* R.R. at 41, 202), unspecified program service revenue ($23,641.00; *see* R.R. at 43-44, 47, 202) and government grants

---

[12] Good Shepherd's capital construction financials were not included, as they are separate from the operational financial records. *See* R.R. at 26.

[13] Hamill reported that Good Shepherd's board members are unpaid. *See* R.R. at 23.

($15,050.00; *see* R.R. at 41, 202),[14] exceeded its $449,273.00 2014 tax year expenses (*see* R.R. at 45, 72, 203). Hamill agreed that Good Shepherd's fundraising covered only approximately 4.5% of its total operating costs, while its tuition and program service revenue covered more than 100% of Good Shepherd's expenses. *See* R.R. at 46-47.

Hamill described based on the 2015 IRS Form 990 that Good Shepherd's 2015 tax year revenue totaled $517,441.00 (*see* R.R. at 63, 233) from tuition and other program service revenue ($483,938.00; *see* R.R. at 233), fundraising ($4,071.00; *see* R.R. at 233) and grants and government subsidies ($29,432.00; *see* R.R. at 233), exceeded its 2015 tax year operating expenses of $502,161.00 (*see* R.R. at 63, 72, 234). Accordingly, Good Shepherd's income more than covered its 2015 tax year operating expenses. *See* R.R. at 63, 70. She recounted that 2015 fundraising was directed to Good Shepherd's capital campaign, rather than its educational program. *See* R.R. at 69-70.

Hamill declared, based on Good Shepherd's 2015-2016 fiscal year operations accounts, that its total fiscal year income of $490,395.63 (*see* R.R. at 27, 50, 53, 306) consisted of $359,611.76 from tuition (*see* R.R. at 27-28, 53, 306), $2,913.70 from fundraising (*see* R.R. at 28, 51, 54, 306), $29,431.60 from grants (*see* R.R. at 28, 51, 54, 65, 306), and the $98,438.57 balance was paid through government programs: $15,078.00 from Head Start (*see* R.R. at 28-29, 52-54, 306), $19,761.30 from the federal Child and Adult Care Food Program (food program) (*see* R.R. at 28-29, 50-51, 306) and $63,599.27 from the Child Care Information Services (CCIS) program[15] (*see* R.R. at 28-29, 51-52, 54, 306).

---

[14] Hamill expounded that STARS grants were used for equipment and general operating expenses, plus staff wages and bonuses. *See* R.R. at 65-66.

[15] CCIS is a state and federally-funded "subsidized child care program [that] helps low-income families pay their child care fees." Pa. Dep't of Human Servs., Child Care Works Subsidized Child Care Program, http://www.dhs.pa.gov/citizens/childcareearlylearning/

Hamill further explained that she assisted in creating Good Shepherd's 2016 Tuition Spreadsheet based on the 80 children enrolled at the time:

> A: The first column under daily private rate is the rate that [Good Shepherd] normally charges, advertised. The family co-pay column indicates what per child in each category infant, toddler, preschool, pre-K, actually pays [Good Shepherd] for daily tuition. The daily discount . . . is . . . similar to the column under family co-pay. The write-off is how much [Good Shepherd] does not receive compared to the daily private rate. So for example the first one is 3520 representing the next column of [Good Shepherd's] percent write-off of 80% that the [a]gency writes off for that child's care. Total discount that's fairly clear and subsidy paid by others is any contribution for example, government contribution[,] . . . to the tuition that the parents or the family does not pay.
>
> . . . .
>
> Q: So the subsidies paid by others, who may be the [a]gencies that pay those subsidies?
>
> A: It would be a combination of [s]tate and [f]ederal government subsidies.
>
> Q: Okay. What programs would comprise those subsidies?
>
> A: In general we have two categories of subsidies in the across the board we'll see the CCIS discounts that are basically part of the Child [Care] Works programs through the state which is a reimbursement program based on income of the family.[16] The other one that we see under subsidy is the Head Start program and that's in a preschool area for the older children.
>
> Q: And Good Shepherd itself provides below[-]cost[] tuition for some of these students?

childcareworkssubsidizedchildcareprogram/ (last visited March 20, 2018); *see also* R.R. at 51-52, 65.

[16] "Child Care Works makes it possible for low-income families to find reliable child care near their home or work and provides financial assistance to help them afford it." Pa. Dep't of Human Servs., Child Care Works http://www.education.pa.gov/Early%20Learning/ Child%20Care%20Works/Pages/default.aspx (last visited March 20, 2018).

A: We do for a number of these cases here and in that case there would not be a subsidy paid amount for those discounts listed.

Q: On the final page of that[,] you performed an analysis of how much the total tuition is discounted both by [] Good Shepherd and through government subsidies. Could you please explain?

A: The total subsidies provided if you total them across the pages is twenty-one percent, we write off about nine percent of the costs of these discounts and there's another twelve percent which is made up in subsidies through the government through government agencies.

Q: This daily tuition does not reflect the food program that is received by children which is on top of the discounted tuition, correct?

A: Correct, we have to purchase food which is not on here and then we are reimbursed for food through the food program.[17]

R.R. at 30-32.

Hamill acknowledged, based on the 2016 Tuition Spreadsheet, that Good Shepherd receives full family tuition payments and/or subsidies for all 80 students in attendance. *See* R.R. at 74-75, 95, 313-318. She expounded that tuition for the three students it accepts without family contribution is fully subsidized. *See* R.R. at 73-74, 314. Hamill further described that Good Shepherd receives full payment (*i.e.*, without discounts or write-offs) for 36 of its 53 school-aged students, and 10 of its 17 pre-school-aged children. *See* R.R. at 74-75, 313-318. She acknowledged that, although the school district is not required to provide infant and toddler care during the summer months, she included summer infant and toddler care income when she calculated Good Shepherd's discount/reduced rate services. *See* R.R. at 75-78.

---

[17] Good Shepherd is a non-pricing institution, which means that it does not separately charge families for their child's meals and snacks. *See* R.R. at 102. Under the food program, Good Shepherd is reimbursed for food it purchases for eligible children. *See* R.R. at 65.

10

Hamill testified that Good Shepherd has not, to date, allowed third parties to use the Property, and it does not contribute to other charities. *See* R.R. at 71-73.

Good Shepherd's Executive Director Angela Smith (Smith) testified that she handles Good Shepherd's day-to-day operations. *See* R.R. at 81, 95. She clarified that although Good Shepherd may have 80 enrolled students over the course of a year, the maximum number of children Good Shepherd may have on the premises at any one time is 54. *See* R.R. at 104, 108. Smith explained that Good Shepherd does not make independent financial eligibility assessments for its attendees; rather, families submit applications to Good Shepherd for childcare/education services and food program enrollment, and are recommended by Good Shepherd and other agencies to apply to Head Start and CCIS for service subsidies. *See* R.R. at 85-86, 102. Smith stated that a family's eligibility for free or reduced meals and snacks is evaluated by food program representatives who audit the applications in Good Shepherd's possession and make determinations based upon the family's income reported therein. *See* R.R. at 102-103. She confirmed that Good Shepherd does not review a family's tax returns or paystubs to determine its financial eligibility for services. *See* R.R. at 103.

"The trial court is the fact finder in tax assessment cases and resolves all matters of credibility and evidentiary weight. Thus, a trial court's findings are binding on appeal when supported by substantial evidence." *Camp Hachshara*, 47 A.3d at 1274 n.5 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Based on the evidence in the instant matter, the trial court held:

> The Board avers, and the record indicates, that more than half of the children registered with [Good Shepherd] in 2016 (53 of 80 children) were charged the full private rate, with the remainder (27 of 80 children) being subsidized by

11

the [Head Start]. [Board Br.] in Supp., p.5.[18] Since the majority of [Good Shepherd's] clients pay the full price for services, this [trial c]ourt cannot find [Good Shepherd] has gratuitously rendered a substantial portion of its services.

. . . .

In the case at bar, [Good Shepherd] has indicated it conducts fundraising activities which help pay for operating expenses and keep tuition rates low. However, [Good Shepherd] provides no additional information on the matter and has failed to quantify [its] fundraising and volunteer [b]oard hours in a way which effectively demonstrates substantial cost reduction for services provided to low-income customers. Instead, [Good Shepherd's] charges to low income customers appear to be covered by a combination of the full price tuition payments of its customers and [f]ederally-provided Head Start subsidies and grants.

The evidence and testimony in the matter before this [trial c]ourt tend to indicate [Good Shepherd] reduces the cost of providing its services to low-income customers primarily through [f]ederal subsidy and cost-shifting. Therefore, this [trial c]ourt is not convinced that [Good Shepherd] has met the second prong of the [*HUP*] [t]est.

Trial Ct. Op. at 3-5.

Good Shepherd's sole argument that it donates services is that several families pay less than its full daily tuition rate. However, while Good Shepherd does not receive 100% of its tuition from the family tuition payments, it failed to demonstrate that it contributes any funding to make up the difference or in any way

---

[18] Good Shepherd's assertion that the trial court erroneously based its factual findings on the Board's Brief in Support of Findings of Fact and Conclusions of Law (Supporting Brief), rather than record evidence is without merit. Indeed, the Board stated in its Supporting Brief: "[Good Shepherd] does not service primarily those who cannot afford the usual fee. Of the 80 registered children in year 2016, 53 . . . were charged the full private pay rate (no discount), and the tuition of the remaining low-income students i[s] mainly subsidized by the federal government's Head Start grants." Certified Record, Item 19 at 5. The trial court cited to the Board's Supporting Brief. However, the information is apparent on the face of the 2016 Tuition Spreadsheet that Good Shepherd placed in the record. *See* R.R. at 313-317. Accordingly, the trial court did not err by citing to the Board's Supporting Brief on that point.

faces financial risk to offer its services. *Nat'l Church Residences of Mercer Cty*. Instead, the record evidence reflects that private tuition payments and government subsidies cover Good Shepherd's costs, such that its limited fundraising is unnecessary to provide its services for low-income families. Under the totality of the circumstances, we hold that Good Shepherd does not donate or gratuitously render a substantial portion of its services. *Nat'l Church Residences of Mercer Cty*. Because Good Shepherd did not preliminarily prove that it meets the second prong of the *HUP* test, the trial court did not err as a matter of law or abuse its discretion by concluding that Good Shepherd is not a purely public charity eligible for property tax exemption.

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Good Shepherd Child Care Center,   :
                       Appellant   :
                                :
             v.                :
                                :
Pike County Board of Assessment   :
Appeals, Pike County, Dingman   :
Township, and Delaware Valley   :   No. 882 C.D. 2017
School District   :

## O R D E R

AND NOW, this 30th day of April, 2018, the Pike County Common Pleas Court's June 6, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge